PEPSI COLA BOTTLING COMPANY OF
ANCHORAGE, Inc., Appellant,

v.

NEW HAMPSHIRE INSURANCE COM-
PANY, Insurance, Inc., and Lewis
E. Simpson, Appellees.

No. 567.

Supreme Court of Alaska.

Nov. 26, 1965.

D. A. Burr, Burr, Boney & Pease, An-
chorage, for appellant.

Daniel A. Moore, Jr., Delaney, Wiles,
Moore & Hayes, Anchorage, for appellee
New Hampshire Ins. Co.

David H. Thorsness, Hughes, Thorsness
& Lowe, Anchorage, for appellees Insur-
ance, Inc. and Lewis E. Simpson.

Before NESBETT, C. J., and DIMOND
and RABINOWITZ, JJ.

NESBETT, Chief Justice.

Before us for consideration is the pro-
priety of the action of the trial court in
granting summary judgment for appellees
based on its interpretation of certain poli-
cies of insurance.

Appellant's complaint alleged four sepa-
rate claims as follows:

(1) Against New Hampshire Insurance
Company in the amount of $50,938.57 for
refusal to pay for on-premises earthquake
loss to the contents of appellant's building
which was covered by a policy issued by
New Hampshire through its agents Insur-
ance, Inc. and Lewis E. Simpson.

(2) For breach of contract by the appellees New Hampshire, Insurance, Inc. and Simpson for failure to procure insurance for appellant identical in coverage to that cancelled by appellant in favor of the New Hampshire policy furnished by the appellees (defendants).

(3) For negligently failing to procure earthquake coverage for appellant in accordance with an express contract to do so.

(4) For fraud and deceit in misrepresenting the coverage provided by the New Hampshire policy.

After the pleadings and a number of depositions and exhibits had been filed, appellant moved for summary judgment, which was denied. Appellees' later motions for summary judgment were granted.

The following facts were before the court.

Until January 1, 1962, the contents of appellant's business building in Anchorage were insured against loss from earthquake damage by an Indemnity Marine Assurance Company, Ltd. policy. Mr. Alfred White of the Seattle firm of Bowles, White & Co., Inc., had procured the policy for appellant.

Earthquake coverage under the Indemnity policy was provided by boxing in with inked lines paragraph 7(h) under "PERILS EXCLUDED", which read:

(h) Loss or damage to property at any premises of the Assured (whether owned, rented, leased or otherwise occupied by, or in storage in warehouse space arranged by or for the account of the Assured) caused by or resulting from earthquake unless such coverage is specifically endorsed hereon, but this exclusion shall not apply to loss or damage by ensuing fire, explosion, sprinkler leakage or theft not otherwise excluded by this policy;

and stamping the words "DELETED" in two places across the boxed in paragraph.

Endorsement No. 5 was added to the policy and read:

It is understood and agreed that each claim for loss or damage from flood or earthquake (separately occurring) shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the sum of $500.00 shall be deducted.

Because it developed that Indemnity Marine could no longer carry the entire coverage for appellant, White, without the knowledge or consent of appellant, cancelled the Indemnity Marine policy effective January 1, 1962. White then obtained a Sun Insurance Office, Ltd. policy, which, according to his testimony by deposition, provided earthquake coverage on the contents of appellant's building.

The relevant provisions of the Sun policy with respect to earthquake coverage of the contents of appellant's building are:

6. *PERILS INSURED*

This policy insures against:

(a) All risks of direct physical loss of or damage to the insured property from any external cause * * *

* * · * * * *

7. *PERILS EXCLUDED*

This policy does not insure against:

* * * * * *

(h) Loss or damage to property at any premises of the Assured (whether owned, rented, leased or otherwise occupied by, or in storage in warehouse space arranged by or for the account of the Assured) caused by or resulting from earthquake unless such coverage is specifically endorsed hereon, but this exclusion shall not apply to loss or damage by ensuing fire, explosion, sprinkler leakage or theft not otherwise excluded by this policy;

* * * * * *

## 12. *DEDUCTIBLE*

In the event of loss or damage covered hereunder this Company shall be liable only for the amount of such loss or damage in excess of $50.00. The foregoing deductible shall not, however, apply to loss or damage by fire, lightning, explosion, windstorm, cyclone, tornado, hail, riot, riot attending a strike, smoke, damage by vehicles or aircraft, accident to transporting conveyance, burglary, holdup, or loss or damage to insured property in due course of transit in the custody of transportation companies or carriers for hire; nor shall this deductible apply to property covered under Clause 3(b) hereof

after "hereof" above, the typewritten phrase:

; or flood or earthquake

was added.

### 13. *LIMITS OF LIABILITY*

\* \* \* \* \* \*

(b) *$1,000.* While away from premises of the Assured at any exhibition promoted or financially assisted by any Public Authority or by any Trade Association;

(c) *$2,500.* Property elsewhere within the territorial limits of this policy except while in transit;

(d) *$5,000.* Property in transit.

The following endorsement was typewritten and dated the same day as the printed policy.

### *ENDORSEMENT NO. 2*

It is understood and agreed that each claim for loss or damage from flood or earthquake (separately occurring) shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the sum of $500.00 shall be deducted.

In the spring of 1962, sales representatives of the appellee Insurance, Inc. solicited officials of appellant company for its insurance coverage and were advised that the coverage could be had provided the same coverage was furnished at the same or a less premium as that of the Sun policy. The Sun policy was given to an officer of Insurance, Inc. and used by him to solicit similar or identical coverage and a competitive rate from New Hampshire Insurance Company. As a result of these efforts, New Hampshire Insurance Company issued a policy in favor of appellant on July 1, 1962, which was in effect on March 27, 1964, when a severe earthquake in Anchorage inflicted extensive damage to the contents of appellant's building. All parties agree that under the facts Insurance, Inc. was obligated to furnish identical coverage to that provided by the Sun policy.

With respect to earthquake coverage the New Hampshire policy stated:

### *LIMITS OF LIABILITY*

3. This policy insures in an aggregate amount not exceeding $330,000.00 but the maximum liability of the Company resulting from any one loss, disaster or casualty, including expenses and charges or all combined, is limited to:

\* \* \* \* \* \*

B. *$5,000.00.* On property while in due course of transit;

C. *NIL.* On property while away from locations described in Paragraph 3A, in the custody or control of the Assured or his or their employees when acting as salesmen; but not exceeding $———— in the custody of any one salesman;

D. *$2,500.00.* On property located elsewhere within the territorial limits of the policy except as described in (A), (B) and (C) above.

### *PERILS INSURED*

\* \* \* \* \* \*

5. This policy insures against all risks of direct physical loss of or damage to the insured property from any external cause except as hereinafter excluded.

PERILS EXCLUDED

\* \* \* \* \* \*

6. This policy does not insure against loss or damage caused by:

\* \* \* \* \* \*

(h) Earthquake, excepting damage caused by ensuing fire. This exclusion does not apply to property in due course of transit nor while in the custody or control of the assured or his or their employees when acting as salesmen.

\* \* \* \* \* \*

8. DEDUCTIBLE CLAUSE

Claim for each loss or damage shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the sum of $25. shall be deducted. Such deductible shall not apply, however, to loss or damage caused by fire, lightning, windstorm, hail, explosion, riot, riot attending strike, smoke, damage by vehicles or aircraft, burglary, or hold-up.

An endorsement with the same date as that of the policy stated:

It is understood and agreed that each claim for loss or damage from flood or earthquake (separately occurring), at premises not owned, rented, leased or otherwise occupied by, or in storage in warehouse space arranged by or for the account of the assured, shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the sum of $500.00 shall be deducted.

In arguing their respective motions the parties treated as controlling the issue of whether or not the Sun and New Hampshire policies provided on-premises earthquake coverage to the contents of appellant's building. The judgment specifically provided that the Sun policy did not provide earthquake coverage on contents, that the New

Hampshire policy provided the same coverage as did the Sun policy, and that the defendants' (appellees') obligations to plaintiff (appellant) were fully discharged by securing the New Hampshire policy.

Appellant refers us to a rule of construction, with which we are in agreement, that where a policy is partly printed and partly written, the writing controls as being the more deliberate expression of the intention of the parties.[1]

Appellant then argues that the endorsement to the New Hampshire policy had the effect of providing on-premises earthquake coverage since the only intelligible construction which can be placed on this endorsement is that it abrogated the earthquake loss exclusion of paragraph 6(h). If this construction is adopted, appellant contends, the policy provisions are all consistent—that is, earthquake loss is an insured risk within the "all risk" provision of paragraph 5 and additionally all earthquake losses occurring "at premises not owned, rented \* \* \*" are subject to a $500.00 deduction.

Appellees argue that under the express language of the endorsement to the New Hampshire policy, there was no earthquake coverage on property located on insured's premises; that such coverage only applied to property located elsewhere than on insured's premises and to property in due course of transit.

Appellant also contends that the effect of Endorsement No. 2 to the Sun policy was to abrogate the earthquake exclusion of paragraph 7(h) and at the same time provide for a $500.00 deduction to each claim for loss.

Appellees argue that the coverage of the New Hampshire policy was patterned after and is identical with the coverage provided by the Sun policy; that the effect of Endorsement No. 2 was not to abrogate the exclusion of paragraph 7(h) but rather to specify the manner and method by which earthquake losses would be adjusted and the amount of the deduction.

1. Lumbermens Mut. Cas. Co. v. Sutch, 197 F.2d 79 (3rd Cir. 1952); New York Life Ins. Co. v. Hiatt, 140 F.2d 752, 168 A.L.R. 551 (9th Cir. 1944).

Our consideration of the various interpretations urged by the parties leaves us undecided as to what coverage was intended by the typewritten endorsements and addition to the Sun and New Hampshire policies.

For example, if the endorsements on the Sun and New Hampshire policies were intended to abrogate the earthquake exclusions contained within the policies, couldn't, and in the ordinary course of affairs wouldn't, the companies have employed direct language to accomplish this purpose, or an unambiguous method such as that employed by Indemnity Marine?[2]

On the other hand, appellee's explanation of the purpose of the endorsements and typewritten addition leaves many unanswered questions. If the Sun policy was not intended to provide earthquake loss, why was the rate. identical with that of the Indemnity Marine policy which all parties concede provided on-premises earthquake coverage? If only property in transit was intended to be covered for earthquake loss, why was it considered necessary to add the phrase "or flood or earthquake" to the deductible paragraph of the Sun policy and why should the coverage provide for so large a deduction when the maximum coverage was only $5,000 for property in transit?

 We are in agreement with those authorities which hold that where the terms of a policy of insurance are clear and unambiguous, the intent of the parties must be ascertained from the instrument itself, and that where there is uncertainty or ambiguity, intent may be ascertained from the language and conduct of the parties, the objects sought to be accomplished and the

surrounding circumstances at the time the contract was negotiated.[3]

 Were we to attempt to determine the intended coverage from the policies and endorsements alone, we would be compelled to hold that both the Sun and the New Hampshire policies were uncertain and ambiguous with respect to on-premises earthquake coverage, in which case disposition in favor of the insured would be required by our decision in Lumbermens Mutual Casualty Co. v. Continental Casualty Co.[4]

However, since the record contained six depositions, those documents were studied in an effort to determine, if possible, some indication of the intent of the parties to aid us in interpreting the meaning of the language used in the endorsements and addition.

The depositions of two officers of appellant corporation established an intent that earthquake coverage be carried on the building and contents for at least two years, commencing with completion of the pre-stressed concrete building in 1958, because of the immaturity of the concrete. Why earthquake coverage on the building was intentionally discontinued after this period, but allegedly not on its contents, is not explained by the testimony. Evidence of the specific intention of those two officers with respect to on-premises earthquake coverage on the contents of the building during the effective periods of the Sun and New Hampshire policies is particularly lacking. The remaining depositions were likewise lacking in evidence of specific intent. This may in large part be due to the fact that comprehensive cross-examination was not conducted.[5]

2. Page 1010 this opinion.

3. Jernigan v. New Amsterdam Cas. Co., 69 N.M. 336, 367 P.2d 519, 523 (1961); Fidelity-Phenix Fire Ins. Co. v. Farm Air Serv., Inc., 255 F.2d 658, 662 (5th Cir. 1958).

4. 387 P.2d 104, 108 (Alaska 1963), where we held that an unintelligible provision in a policy of insurance should be construed most favorably to the insured and cited

Travelers Indem. Co. v. Pray, 204 F.2d 821, 823 (6th Cir. 1953).

5. Noticeably absent in all of the depositions is any serious attempt to develop or test the testimony of the witnesses. This could be the result of the strategy of the appellees. On the other hand, it may be explainable by the fact that appellees were reserving serious cross-examination for the trial.

██ We are not in agreement with the interpretation of the policies adopted by the trial court. Since that court's decision was based solely on the policies and depositions, we shall not be bound by the decision below.[6]

██ A study of the depositions leads us to believe that an explanation of most, if not all, of the unanswered questions raised by the various interpretations urged by the parties, might be furnished by a trial of the case. Disposition by summary judgment under the circumstances of this case, and in view of the fact that appellant was requesting the opportunity to supplement evidence of intent, was premature.[7]

The summary judgment is set aside and the case is remanded for trial of the issues.

6. Carter Oil Co. v. McQuigg, 112 F.2d 275 (7th Cir. 1940); 5 Moore, Federal Practice § 52.04 (2d ed. 1964).

7. United States v. Manufacturers Cas. Ins. Co., 158 F.Supp. 319, 320 (S.D.N.Y. 1957).