**PEPSI COLA BOTTLING COMPANY OF ANCHORAGE, Inc., Appellant,**

v.

**.NEW HAMPSHIRE INSURANCE COMPANY, Insurance, Inc., and Lewis E. Simpson, Appellees.**

**No. 820.**

Supreme Court of Alaska.

Nov. 13, 1967.

Warren W. Matthews, Jr., Theodore R. Dunn, Anchorage, for appellant.

Daniel A. Moore, Jr., Robert C. Erwin, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

NESBETT, Chief Justice.

This appeal is before us for the second time. Again, the question is the propriety of the action of the trial court in granting summary judgment in favor of New Hampshire Insurance Company, Insurance, Inc. and Lewis E. Simpson.[1] In our previous decision[2] we held that the granting of summary judgment in favor of appellees was premature under the circumstances and remanded the case for trial. After a number of depositions had been taken, cross motions for summary judgment were again filed. The court eventually granted the motions of New Hampshire Insurance Company, Insurance, Inc. and Lewis E. Simpson. Bowles, White and Company, Inc. is the only remaining defendant.

The relevant facts which were before us on the first appeal will be stated in the following paragraphs.

Until January 1, 1962, the contents of appellant's business building in Anchorage were insured against loss from earthquake damage by an Indemnity Marine Assurance Company, Ltd. policy. Mr. Alfred White of

---

1. Subsequent to our remand of the case the trial court granted appellees' contested motion for an order requiring appellant to amend its complaint to add Bowles, White & Company, Inc. as a party defendant.

2. Pepsi Cola Bottling Co. v. New Hampshire Ins. Co., 407 P.2d 1009 (Alaska 1965).

the Seattle firm of Bowles, White & Co., Inc. had procured the policy for appellant.

Earthquake coverage under the Indemnity policy was provided by boxing in with inked lines paragraph 7(h) under "PERILS EXCLUDED", which read:

(h) Loss or damage to property at any premises of the Assured (whether owned, rented, leased or otherwise occupied by, or in storage in warehouse space arranged by or for the account of the Assured) caused by or resulting from earthquake unless such coverage is specifically endorsed hereon, but this exclusion shall not apply to loss or damage by ensuing fire, explosion, sprinkler leakage or theft not otherwise excluded by this policy;

and stamping the words "DELETED" in two places across the boxed in paragraph.

Endorsement No. 5 was added to the policy and read:

It is understood and agreed that each claim for loss or damage from flood or earthquake (separately occurring) shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, which ever is less, the sum of $500.00 shall be deducted.

Because it developed that Indemnity Marine could no longer carry the entire coverage for appellant, White, without the knowledge or consent of appellant, cancelled the Indemnity Marine policy effective January 1, 1962. White then obtained a Sun Insurance Office, Ltd. policy, which, according to his testimony by deposition, provided earthquake coverage on the contents of appellant's building.

The relevant provisions of the Sun policy with respect to earthquake coverage of the contents of appellant's building are:

6. PERILS INSURED

This policy insures against:

(a) All risks of direct physical loss of or damage to the insured property from any external cause;

\*   \*   \*   \*   \*   \*

7. PERILS EXCLUDED

This policy does not insure against:

\*   \*   \*   \*   \*   \*

(h) Loss or damage to property at any premises of the Assured (whether owned, rented, leased or otherwise occupied by, or in storage in warehouse space arranged by or for the account of the Assured) caused by or resulting from earthquake unless such coverage is specifically endorsed hereon, but this exclusion shall not apply to loss or damage by ensuing fire, explosion, sprinkler leakage or theft not otherwise excluded by this policy;

\*   \*   \*   \*   \*   \*

12. DEDUCTIBLE

In the event of loss or damage covered hereunder this Company shall be liable only for the amount of such loss or damage in excess of $50.00. The foregoing deductible shall not, however, apply to loss or damage by fire, lightning, explosion, windstorm, cyclone, tornado, hail, riot, riot attending a strike, smoke, damage by vehicles or aircraft, accident to transporting conveyance, burglary, holdup, or loss or damage to insured property in due course of transit in the custody of transportation companies or carriers for hire; nor shall this deductible apply to property covered under Clause 3(b) hereof.

After "hereof" above, the typewritten phrase "; or flood or earthquake" was added.

13. LIMITS OF LIABILITY

\*   \*   \*   \*   \*   \*

(b) $1,000. While away from premises of the Assured at any exhibition promoted or financially assisted by any Public Authority or by any Trade Association;

(c) $2,500. Property elsewhere within the territorial limits of this policy except while in transit;

(d) $5,000. Property in transit.

The following endorsement was typewritten and dated the same day as the printed policy.

### ENDORSEMENT NO. 2

It is understood and agreed that each claim for loss or damage from flood or earthquake (separately occurring) shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the sum of $500.00 shall be deducted.

In the spring of 1962, sales representatives of the appellee Insurance, Inc. solicited officials of appellant corporation for its insurance coverage and were advised that the coverage could be had provided the same coverage as that provided by the Sun policy was furnished at the same or a less premium. The Sun policy was given to an agent of Insurance, Inc. and used by him to solicit similar or identical coverage and a competitive rate from New Hampshire Insurance Company. As a result of these efforts, New Hampshire Insurance Company issued a policy in favor of appellant on July 1, 1962, which was in effect on March 26, 1964, when a severe earthquake in Anchorage inflicted extensive damage to the contents of appellant's building. All parties agree that under the facts Insurance, Inc. was obligated to furnish identical coverage to that provided by the Sun policy.

With respect to earthquake coverage the New Hampshire policy stated:

### LIMITS OF LIABILITY

3. This policy insures in an aggregate amount not exceeding $330,000.00, but the maximum liability of the Company resulting from any one loss, disaster or casualty, including expenses and charges or all combined, is limited to:

\* \* \* \* \* \*

B. $5,000.00. On property while in due course of transit;

C. $ NIL . On property while away from locations described in Paragraph 3A, in the custody or control of the Assured or his or their employees when acting as salesmen; but not exceeding $——— in the custody of any one salesman;

D. $2,500.00. On property located elsewhere within the territorial limits of the policy except as described in (A), (B) and (C) above.

\* \* \* \* \* \*

### PERILS INSURED

5. This policy insures against all risks of direct physical loss of or damage to the insured property from any external cause except as hereinafter excluded.

### PERILS EXCLUDED

6. This policy does not insure against loss or damage caused by:

\* \* \* \* \* \*

(h) Earthquake, excepting damage caused by ensuing fire. This exclusion does not apply to property in due course of transit nor while in the custody or control of the assured or his or their employees when acting as salesmen.

\* \* \* \* \* \*

8. DEDUCTIBLE CLAUSE. Claim for each loss or damage shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the sum of $25. shall be deducted. Such deductible shall not apply, however, to loss or damage caused by fire, lightning, windstorm, hail, explosion, riot, riot attending strike, smoke, damage by vehicles or aircraft, burglary, or hold-up.

An endorsement with the same date as that of the policy stated:

It is understood and agreed that each claim for loss or damage from flood or earthquake (separately occurring), at premises not owned, rented, leased or otherwise occupied by, or in storage in warehouse space arranged by, or for the

account of the assured, shall be adjusted separately and from the amount of each such adjusted claim or the applicable limit of liability, whichever is less, the sum of $500.00 shall be deducted.

The question argued by the parties to the first appeal was whether or not the Sun and New Hampshire policies provided on-premises earthquake coverage to the contents of appellant's building. After considering the various interpretations advanced by the parties this court stated:

> Our consideration of the various interpretations urged by the parties leaves us undecided as to what coverage was intended by the typewritten endorsements and addition to the Sun and New Hampshire policies.

> For example, if the endorsements on the Sun and New Hampshire policies were intended to abrogate the earthquake exclusions contained within the policies, couldn't, and in the ordinary course of affairs wouldn't, the companies have employed direct language to accomplish this purpose, or an unambiguous method such as that employed by Indemnity Marine?

> On the other hand, appellee's explanation of the purpose of the endorsements and typewritten addition leaves many unanswered questions. If the Sun policy was not intended to provide earthquake loss, why was the rate identical with that of the Indemnity Marine policy which all parties concede provided on-premises earthquake coverage? If only property in transit was intended to be covered for earthquake loss, why was it considered necessary to add the phrase "or flood or earthquake" to the deductible paragraph of the Sun policy and why should the coverage provide for so large a deduction when the maximum coverage was only $5,000 for property in transit?

> \* \* \* \* \* \*

> A study of the depositions leads us to believe that an explanation of most, if not all, of the unanswered questions raised by the various interpretations urged by the parties, might be furnished by a trial of the case. Disposition by summary judgment under the circumstances of this case, and in view of the fact that appellant was requesting the opportunity to supplement evidence of intent, was premature.

> The summary judgment is set aside and the case is remanded for trial of the issues.[3]

The taking of depositions subsequent to remand established a number of facts pertinent to a determination of the issues raised and which gave some explanation of the apparent policy inconsistencies mentioned by this court in its previous opinion.

It is now undisputed that the Indemnity Marine Assurance policy and the Sun policy were both prepared by the same company through its agents and were on identical forms. The Sun policy was intended to provide the same earthquake coverage as the Indemnity Marine policy. However, a clerical error of omission occurred in the preparation of the Sun policy and clause 7(h) [4] excluding on-premises earthquake damage from coverage, was not lined out and stamped "deleted" as had been done in the Indemnity Marine policy. The error was discovered by the New York office of the issuing company which notified its San Francisco office which in turn notified its Seattle office on March 16, 1962, urging that the error be corrected. No correction was ever made to the Sun policy, which was cancelled by appellant on July 1, 1962.

The fact that the premiums for the Sun and Indemnity Marine policies were identical has been explained by the fact that the Sun policy was intended to provide the same earthquake coverage as the Indemnity Marine policy. It is now established that the premium charged for earthquake coverage in the Indemnity Marine policy had been the subject of negotiation between

3. 407 P.2d at 1013, 1014.

4. Supra, page 4.

appellant and Bowles, White and Company, Inc. As a result, the premium had been reduced to an amount which was considerably below that established as standard by the Pacific Fire Rating Bureau. The Sun policy was later issued for the same negotiated premium.

The deposition testimony of experienced underwriters gave reasons, although slightly conflicting, for the addition of the words "or flood or earthquake" to the deductible provision of the Sun policy and for the seemingly high deduction of $500 on claims for damage by earthquake to goods in transit.

Appellant's first point is that under the doctrine of the law of the case this court is bound on this appeal by its statement in its opinion in the previous appeal, that both the Sun and New Hampshire policies were uncertain and ambiguous with respect to on-premises earthquake coverage. Appellant then argues that the ambiguities mentioned in the previous opinion should, under the rule of Lumbermens Mut. Cas. Co. v. Continental Cas. Co.,[5] be construed favorably to appellant in this appeal.

Appellant has misinterpreted this court's statement and its intention in remanding the case. What this court said in its previous opinion was that:

> Were we to attempt to determine the intended coverage from the policies and endorsements alone, we would be compelled to hold that both the Sun and the New Hampshire policies were uncertain and ambiguous with respect to on-premises earthquake coverage, in which case disposition in favor of the insured would be required by our decision in Lumber-

mens Mutual Casualty Co. v. Continental Casualty Co.[6]

It is obvious from the above that the court had no intention of attempting to resolve in that proceeding the uncertainties and ambiguities mentioned in the opinion.

It was the court's belief that most, if not all, of the uncertainty could be explained and eliminated by the accumulation of additional evidence. In order that this might be done the summary judgment was set aside and the case remanded for trial.

■ After remand numerous depositions were taken which shed considerable light on the intentions of the parties and supplied reasons for and interpretations of certain troublesome provisions in the policies. In view of the development of the evidence under these circumstances it can not logically be argued that this court is nevertheless bound in this proceeding by its previous statement that, under the state of the evidence as it then existed, the provisions of the policies were uncertain and ambiguous. The doctrine of the law of the case has no application.[7]

The question now before us is whether, in the light of the additional evidence, the policies are, as a matter of law, ambiguous with respect to on-premises earthquake coverage.

While the pertinent provisions of the policies are clumsy and are not completely clear and unequivocal, we do not believe that they create such ambiguity with respect to on-premises earthquake coverage that the New Hampshire policy should be construed as providing such coverage for appellant.

5. 387 P.2d 104, 108 (Alaska 1963). Wherein this court held that an unintelligible provision in an automobile liability policy covering an automobile lessor should be construed most favorably to lessor.

6. 407 P.2d at 1013.

7. Patrick v. Sedwick, 413 P.2d 169, 173 (Alaska 1966) has been cited but has no application to the facts of this case. In Patrick, the issue of liability had been decided by this court in a previous appeal (391 P.2d 453, 460 (Alaska 1964)) and the case remanded for the determination of damages. On the second appeal appellant requested a reconsideration of the question of liability. It was held that in the absence of exceptional circumstances warranting a departure from the doctrine of the law of the case that doctrine was applicable and the issue would not be reopened.

We now know that the standard method of providing earthquake coverage in policies, similar to the Sun form was to line or block out the earthquake exclusion paragraph and mark it "deleted" or to add a separate endorsement to the policy, or to do both. Through clerical error, neither of these methods was employed in the Sun policy. We are also advised by the testimony of experts in underwriting that the $500 deductible provision in the Sun policy for claims for earthquake damage to bottles and similar goods in transit may not be abnormally high.[8] Because it appears to approximate a normal earthquake loss deduction, the provision as a whole no longer raises a question as to whether it might not have been intended to abrogate the earthquake exclusion provisions of paragraph 7(h). The amount of the premium having been explained, it does not now create doubts.

In short, with the knowledge we now have we do not believe that the pertinent provisions of the Sun policy, lacking the physical deletion of paragraph 7(h), are reasonably susceptible of the construction that the parties intended to include on-premises earthquake coverage.

The Sun policy was handed to an agent of Insurance, Inc. by the owner and manager of appellant corporation with the request that "like" or "the same" coverage for the same or a smaller premium be provided. Appellant's manager did not know whether the Sun policy provided earthquake coverage and he did not make any specific request of Insurance, Inc.'s agent except that "like coverage" or "the same" coverage be provided. Insurance, Inc. forwarded the Sun policy to New Hampshire Insurance Company requesting a betterment in premium. No mention was made of earthquake coverage. Appellant eventually cancelled his Sun policy in favor of the New Hampshire policy when Bowles, White and Company, Inc. refused to better the rate which New Hampshire Insurance Company had offered through Insurance, Inc.

The parties have stipulated that appellant's manager only requested that Insurance, Inc.'s agent provide like coverage as that contained in the Sun policy. It is not claimed that Insurance, Inc. or New Hampshire Insurance Company actually knew that the Sun policy was intended to provide earthquake coverage. Nor is it disputed that, insofar as the wording of its various provisions is concerned, the New Hampshire policy does provide essentially the same coverage as the Sun policy.

Appellant's next point is that the contractual obligation of New Hampshire Insurance Company and Insurance, Inc. was to provide like coverage as that of the Sun policy and since it has now been established that the Sun policy did provide on-premises earthquake coverage, they are in breach of their contract if the New Hampshire policy did not provide this coverage. Appellant argues in the alternative that if the New Hampshire policy did provide the same coverage as the Sun policy, then New Hampshire Insurance Company is bound by the coverage of the Sun policy.

The undertaking of Insurance, Inc. and New Hampshire Insurance Company, pursuant to appellant's offer, was to procure like coverage as that provided by the Sun policy. Reasonably construed, the Sun policy which New Hampshire received did not provide on-premises earthquake coverage. The provisions of the Sun policy and the amount of the premium can not, under the circumstances be held to have placed appellees on notice that on-premises earthquake coverage may have been intended to be supplied. Insurance, Inc. and New

8. The deposition testimony with respect to this, and some of the other policy provisions was somewhat conflicting but no point of this fact has been made on appeal. The testimony of most of the witnesses was that the amount of the deductible provision was a negotiated item in each insurance contract and it appears not to have been disputed that ten percent of the amount of the coverage would not be unusual.

Hampshire Insurance Co. are not bound by what appellant's owner and manager may have mistakenly thought the Sun policy provided in the way of earthquake coverage.[9] Nor are they in any way bound by the fact that appellant may have been entitled to have the Sun policy reformed to conform to the intent of the parties to provide on-premises earthquake coverage.[10]

■ In delivering the New Hampshire policy, which provided essentially "the same" or "like coverage" as the Sun policy could reasonably be construed as providing, at a premium satisfactory to appellant, the appellees must be held to have fully performed their contract with appellant.

The judgment is affirmed.

9. The mistaken view of appellant's owner and manager that the Sun policy did provide on-premises earthquake coverage, if in fact he did hold such a view, did not prevent the formation of a contract under the circumstances. 1 S. Williston, Contracts § 94 (3rd ed. 1957).

10. Appellees point out that when appellant alleges that "It has now been established that the Sun policy provided insurance against on-premises earthquake loss", what it no doubt means to infer is that appellant, under the circumstances, was entitled to have the Sun policy reformed to read as it was intended to read when it was issued. Appellant, however, makes no argument with respect to the reformation of either the Sun or the New Hampshire policies.