Gale KINCAID, Individually and d/b/a
Safeway Mobile Sales, et al.,
Appellants,

v.

Betty Walsh KINGHAM, Appellee.

No. 2630.

Supreme Court of Alaska.

Feb. 7, 1977.

---

Richard D. Thaler, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

Russellyn S. Carruth, Burr, Pease & Kurtz, Inc., Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

The central issue in this appeal involves interpretation of two provisions of a consignment sales contract. In January 1975 appellants entered into a consignment contract with appellee Betty Kingham to sell Kingham's mobile home. The contract was prepared by appellants and provided that

appellants were given an exclusive 32-day option to sell Kingham's mobile home. The contract further provided that Kingham agreed to "accept a net flat price of $14,000" and authorized appellants "to retain any amount received over and above said net price as reimbursement for expenses involved and as a selling commission." Thereafter, appellant Kincaid sold the mobile home for $19,000 and tendered a total amount of $5,536.88 to Kingham, using the remaining $8,463.12 of the $14,000 sale price to pay off the existing mortgage on the mobile home.[1] Appellants retained the remaining $5,000 as their commission.[2]

Kingham instituted suit in the superior court for damages arising from appellants' breach of the consignment contract. Upon Kingham's motion for summary judgment, the superior court entered findings of fact, conclusions of law and a judgment for Kingham against appellants in the amount of $8,000, plus interest and attorney's fees. This appeal followed.

The portions of the consignment contract which give rise to this appeal are contained in paragraphs 1 and 2 of the document. Paragraph 1 of the contract provides that appellants are

. . . authorized to negotiate for the sale of, and to sell, said property for not less than $_____ and if a sale is closed, owner agrees to pay agent a commission of _____% of the agreed selling price; however, owner in any event agrees to accept a net flat price of $14,000 authorizing seller to retain any amount received over and above said net price as reimbursement for expenses involved and as a selling commission.[3]

Paragraph 2 of the consignment contract reads as follows:

---

1. Appellants tendered two checks to Kingham, one in the amount of $5,036.88 and a second in the amount of $500. Kingham cashed the first check and negotiated the second check only after the superior court had entered summary judgment in her favor. Prior to the time Kingham cashed the $500 check, the language "The undersigned releases all and any interest in one 1970 Budger SN S5777," which was typed on the back of the check, was obliterated.

2.  
```
    $19,000 - total sale price of mobile home
  - 14,000 - [$5,536.88 paid to Kingham
             $8,463.12 used to pay off existing
             mortgage]
  _____
  $ 5,000   Commission retained by appellants.
```

3. The first two blanks in paragraph 1 of the consignment contract were lined out; the third blank, designating the net flat price, was filled in with the figure of $14,000.

Owner agrees to deliver said property to purchaser free and clear of all liens including taxes, assessments, licenses fees, etc., and that said property is free and clear of all personal property judgments or encumbrances, other than indicated herein.[4]

The superior court found the language of both of these paragraphs to be unambiguous and ruled that the term "net flat price" represented a net amount of $14,000 to be paid to Kingham for her equity in the mobile home, and thus that no deduction from that amount was required for the payment of the $8,000 encumbrance which was disclosed elsewhere in the consignment contract.[5]

■ In this appeal, appellants assert two separate grounds in support of their contention that the superior court's entry of summary judgment was erroneous. First, appellants contend the superior court ruled incorrectly when it determined that the text of paragraphs 1 and 2 of the contract were not ambiguous. Secondly, appellants argue that even if the consignment contract is held to be unambiguous, the superior court erroneously refused to consider a supplementary affidavit which sought to demonstrate that the consignment contract had been modified by subsequent oral agreement of the parties.[6]

■■ If the term "net flat price" is ambiguous, extrinsic evidence of the parties' intentions at the time the consignment contract was entered into would be admissible,[7] and consideration of such evidence would then be a matter for determination by the trier of facts. For in *Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188, 1194 (Alaska. 1975), we said:

> Where interpretation of a written instrument turns on the acceptance of extrinsic evidence, the process of weighing such evidence should be for the trier of fact. (footnote omitted)

4. The consignment contract indicated that the subject mobile home was financed through First National Bank, and that an amount of $8,000 was still owing. Subsequently, it was shown that this figure was inaccurate, and that at the time the consignment contract was entered into, $8,463 was the remaining balance on Kingham's mobile home.

5. In its oral decision the superior court stated in part:

> Well, I view paragraph 2, other than indicated herein to apply to both conditions in paragraph 2; the free and clear of all liens including taxes, assessment, licenses, et cetera and personal property judgment and encumbrances other than indicated herein, is the way I read it. Now, in the common knowledge—the 'Webster dictionary common—that I have just checked and it conforms with what I believe to be the common knowledge of—net price is clear of and free from all charges and deductions, et cetera— that remaining after the deduction of all charges and outlays. And I don't think any extrinsic testimony is needed here to give a fair and ordinary interpretation to this contract and I hold that she was entitled to $14,000 after payment of the $8,000.

6. In the affidavit alluded to, Kincaid averred that although he informed Kingham that she would receive a total of $5,536 from the sale, she did not protest this fact. The court is unanimous in concluding that the superior court did not err in refusing to consider Kincaid's affidavit as evidence of an oral modification of the consignment contract.

In *National Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 586–87 (Alaska 1976), the appellant similarly urged that a subsequent oral modification of a contract be inferred solely from the parties' conduct. We rejected this contention in part because there was no evidence of any consideration having been given for the modification and "in the absence of some consideration for the alleged change, no modification has taken place." 546 P.2d at 587. In the case at bar, appellants did not present any evidence of consideration having been given to Kingham for this alleged modification of the contract. Further, in paragraph 6 the contract provides:

> Agent is further authorized to negotiate for the sale of and to sell said described property for such lessor sum or upon such different terms . . . if the owner shall accept such terms in writing.

7. *National Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 582 (Alaska 1976); *Day v. A & G Constr. Co., Inc.*, 528 P.2d 440, 443 (Alaska 1974); *Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296, 1305 (Alaska 1972); *Port Valdez Co. v. City of Valdez*, 437 P.2d 768, 771 (Alaska 1968); *Pepsi Cola Bottling Co. of Anchorage v. New Hampshire Ins. Co.*, 407 P.2d 1009, 1013 (Alaska 1965).

Since summary judgment is warranted only in the absence of any genuine issue as to a material fact, it would be error for the superior court, in absence of undisputed affidavits pertaining to the extrinsic facts, to grant a motion for summary judgment.[8] Illustrative of this rule is *Smalley v. Juneau Clinic Building Corp.*, 493 P.2d 1296, 1305 (Alaska 1972), in which we stated:

> Since we find the two agreements ambiguous as to whether it was the intent of the parties to provide that the assets of the Juneau Clinic partnership were to be made first liable for the payment of a judgment for rent, we hold that under the criteria of *Pepsi Cola* this issue was an inappropriate one for resolution by summary judgment.

■ Turning to the case at bar, appellants contend that the consignment contract is ambiguous. As we noted in *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976), "The mere fact that two parties disagree as to the interpretation of a contract term does not necessarily imply that an ambiguity exists in the contract. Rather, an ambiguity exists only when the contract, taken as a whole, is reasonably subject to differing interpretations." (footnote omitted)[9] Applying the latter principle to our analysis of the consignment contract has led us to the conclusion that paragraphs 1 and 2 are ambiguous. In short, we are of the view that the undefined term "net flat price" as employed in paragraph 1 of the contract is reasonably subject to differing interpretations in light of the ambiguous language found in paragraph 2 of the consignment contract.

More particularly, we find the superior court's interpretation of paragraph 2 a reasonable one leading to the conclusion that the term "net flat price" of $14,000 was intended to refer to the desired balance after the existing mortgage of $8,000 had been deducted from the selling price. On the other hand, we think paragraph 2 is subject to the equally reasonable interpretation that the phrase "other than indicated herein" refers only to the second clause of paragraph 2 and not to Kingham's promise to deliver the mobile home to the purchaser free and clear of all liens. Under this interpretation, it becomes the duty of Kingham to satisfy the existing mortgage from the $14,000 net flat price.

We therefore conclude that the superior court's grant of summary judgment should be reversed and the matter remanded for such further proceedings as are appropriate.[10]

Reversed and remanded.

CONNOR, Justice, concurring separately.

I agree with reversal and remand of this case, but not with the reasons relied upon in the majority opinion.

In my view the term "net flat price" is not ambiguous.[1] It refers to the amount of money for which Kingham will part with title to her property. There is nothing about that term which implies that Kingham shall receive $14,000 after all liens thereon have been discharged. It was not

---

**8.** Alaska R.Civ.P. 56(c); *Braund, Inc. v. White*, 486 P.2d 50 (Alaska 1971).

**9.** In *National Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579 (Alaska 1976), we held that extrinsic evidence is admissible for the purpose of determining whether a contract term is ambiguous. Here we find the terms in question to be ambiguous without the need to look to such extrinsic evidence.

**10.** Upon remand it will be incumbent upon the trial court to receive extrinsic evidence as to the appropriate meaning of "net flat price" as that term was used in the consignment contract.

**1.** The question whether a contract is ambiguous is one of law, to be decided by the court. If it is held not to be ambiguous, its construction also is a matter of law for the court. *Day v. A & G Constr. Co.*, 528 P.2d 440, 443 (Alaska 1974); *Gardiner v. Gaither*, 162 Cal.App.2d 607, 329 P.2d 22, 27 (1958); *May v. Chicago Insurance Co.*, 260 Or. 285, 490 P.2d 150, 153–54 (1971); 4 Williston on Contracts § 616 at 649 (3d ed. 1961). Hence on appeal we are not required to give the superior court's conclusion on this issue the great deference which we give findings of fact. *See* Civil Rule 52(a).

Kingham's equity which was to be sold. Rather it was her entire interest in the property. Paragraph 1 refers to a sale of "said property," and not a fractional interest therein.

This reading of the agreement is reinforced by the language of paragraph 2 whereby Kingham agrees to deliver the property to the purchaser free and clear of all liens.. This is an act which Kingham cannot perform unless the $8,463.12 mortgage indebtedness is first discharged. It means that Kingham will accept a price of $14,000 for her property, that she will deliver an unencumbered title, and that the broker will be compensated solely by any amount paid by the purchaser in excess of $14,000.

I cannot read the second clause of paragraph 2, ". . . and that said property is free and clear of all personal property judgments or encumbrances, other than indicated herein," as modifying the term "net flat price" so that any encumbrances noted in the other parts of the agreement must be deducted from the $14,000 price term.

In my view paragraph 2 contains two distinct features. The first is a promise to deliver the property free of all liens. The second is in the nature of a warranty that the property is free of encumbrances other than those noted in the agreement. Though the language is inartful, its intention is clear. What it says in effect is: "Owner agrees (1) to deliver . . . and (2) that [the property is clear of liens other than those noted]."

The first clause of paragraph 2 states an obligation on the part of the owner. The second clause states a condition or attribute of the property. To me these are quite different things, with quite different consequences. Undoubtedly the reason for having the second clause of paragraph 2 in the agreement is to guard the broker or a purchaser against having to absorb a loss caused by unforeseen and unknown liens against the property. Otherwise such liens could eliminate the broker's profit or commission altogether or could require the purchaser to pay more than the agreed-upon price.

A case which exemplifies my interpretation of "net flat price" is *Schneidau v. Manley*, 131 Conn. 285, 39 A.2d 885, 888 (1944), in which an agreement to sell a parcel of realty for "$8500 net" was held to require the seller to extinguish inchoate dower rights worth $3000 out of the $8500 proceeds, without collecting an additional $3000 from the buyer.

> "As the agreement is silent as to any qualifications or limitations upon the title to be conveyed, it means a title free and clear of all encumbrances. The price agreed upon means the sum to be paid for such a title; and the obligation is upon the [seller] to discharge any encumbrance there may be on the property before conveying it." *Id.* (citations omitted)

It is hard to conceive of a broker undertaking a sale in these circumstances when numerous liens, including taxes, assessments, license fees, etc., might exceed even the price, here $19,000, for which the broker is able to negotiate a sale with the purchaser. Yet that seems to be the result if the agreement is read as Kingham contends it should be read.

In short, I can find nothing in the agreement which implies that Kingham was to receive $14,000 for her equity in the property. Everything points toward her receiving $14,000 for parting with clear title to the whole property. For these reasons I would reverse and remand with instructions to enter judgment for appellants.

BURKE, Justice, with whom ERWIN, Justice, joins, dissenting.

I respectfully dissent. In my opinion, the superior court was correct when it found the language of the contract unambiguous and ruled that the term "net flat price" meant that Kingham was to receive $14,000 for her equity in the mobile home, with no deduction for the mortgage balance. Accordingly, I would affirm the judgment of the court below.