NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| EVEHUI WANG ZHAO and GONG EN ZHAO, | ) ) | |
| | ) | Supreme Court No. S-14390 |
| Appellants, | ) ) | |
| | ) | Superior Court No. 3AN-10-10284 CI |
| v. | ) ) | |
| | ) | MEMORANDUM OPINION |
| SHI WU HUANG, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1422 - June 20, 2012 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances:  John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellants.  James T. Brennan, Hedland, Brennan, and Heideman, Anchorage,  for Appellee.

Before:   Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

## I.   FACTS AND PROCEEDINGS

### A.   Facts

Gong En and Evehui Wang Zhao own commercial  property in an Eagle River mall, where they operated a restaurant for over 25 years.  Shi Wu Huang entered into negotiations with the Zhaos to lease the property and purchase existing furniture and equipment for a new restaurant in the space.  The parties agreed to a five-year lease

---

\*      Entered pursuant to Appellate Rule 214.

beginning May 1, 2010, with a separate property sales agreement. They also signed a lease amendment (Amendment 1) agreeing Huang would have three rent-free months for his renovations to the restaurant space.

Huang then learned that the restaurant space did not have an automatic fire sprinkler system and that this might prevent fire department approval of his renovations. The Zhaos had not been required to install a sprinkler system for their restaurant, but the 2006 fire code required sprinkler installation if renovations included more than "minor" modifications. Lee Zhao, the Zhaos' son, drafted another lease amendment (Amendment 2) with the stated purpose to "ensure the fire suppression of [Huang's] planned renovations . . . was addressed." Amendment 2 provided that:

> Planned renovations per [Huang's] requests are mostly decorative, such as replacing ceiling and floor tiles, and other Chinese designs commonly seen in the Chinese food industries. Should there be any questions, issues, or problems related to the fire codes during [Huang's] planned renovations, the [Zhaos] will be notified and will be responsible for any corrective actions.

Mr. Zhao's signature was on Amendment 2 when it was delivered for Huang's signature "on or before May 7, 2010." Mrs. Zhao later claimed it was not possible her husband signed the amendment because he had been in China obtaining medical treatment, but Mr. Zhao returned on May 6, 2010, and he did not contest his signature on Amendment 2.

The parties later signed a third lease amendment (Amendment 3) providing that Huang would pay the Zhaos a $50,000 deposit and submit a plan to the fire department "for approval of the Sprinkler System." The amendment further provided that "[i]f the plan is denied by the Fire Department" the Zhaos would refund the deposit. Huang made the $50,000 payment to the Zhaos.

Huang obtained several potential floor plans and claimed he delivered them to Mrs. Zhao with the caveat that he had not yet selected a particular plan. Each plan involved substantially relocating the dining room tables and the buffet, changing the banquet room size, moving a wall, and narrowing the banquet room exit. Huang obtained an additional floor plan, which featured the same changes. Huang claimed that when he delivered this plan to Mrs. Zhao and informed her he planned to file it for approval with the fire department, Mrs. Zhao voiced no objection. Mrs. Zhao admitted that Huang showed her designs at some point and that the Zhaos never expressed any objection to the plans, but claimed none were the plan Huang submitted to the fire department.

The fire department reviewed the plan and notified Huang it could not be approved as submitted because the proposed renovations were more than "minor" and would require compliance with the current fire code. The primary issue was the absence of an appropriate sprinkler system, without which the fire department would not approve Huang's plan. When the Zhaos refused to install a sprinkler system in the restaurant space, Huang requested they return his deposit; the Zhaos refused.

B.    **Proceedings**

Huang filed a complaint, alleging the Zhaos breached the lease agreement by not installing a sprinkler system and not returning his deposit. He requested $50,000 in damages. The Zhaos denied Huang's allegations and counterclaimed that Huang had breached the lease agreement, seeking $250,000 in damages. Huang moved for summary judgment. The superior court granted Huang's motion, determining as a matter of law that Huang was entitled to a refund of his $50,000 deposit based on two grounds.

First, the superior court explained that "[u]nder the express and unambiguous terms of Amendment 2 to the commercial lease, [the Zhaos] agreed to resolve any fire code issues arising from [Huang's] renovations." The court noted that:

(1) "Amendment 2 was drafted specifically to address the possibility that [Huang's] renovations would require additional fire safety measures"; (2) Amendment 2's description of the renovations as " '*mostly* decorative' . . . expressly allow[ed] room for at least some changes that are not decorative in nature"; and (3) Amendment 2 placed "the onus of fire code compliance squarely" on the Zhaos. The court found that while the Zhaos "attempted to introduce ambiguity as to [the] scope of permissible renovations under the lease," the lease and amendments were "not reasonably subject to differing opinions."

Second, the superior court explained that Amendment 3 unambiguously provided for the return of Huang's deposit if the fire department denied Huang's renovation plan. The court found that the fire department "effectively denied the plan" for lack of a proposed sprinkler system "because [the Zhaos] were unwilling to install a sprinkler system" despite "their obligation under Amendment 2."

## II. LEGAL STANDARDS

We review grants of summary judgment de novo, determining whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.[1] "In particular, a grant of summary judgment based upon contract interpretation is subject to de novo review because interpretation of contract language is a question of law."[2] Contract interpretation is a question of fact only where the court

---

[1]    *Handle Constr. Co. v. Norcon, Inc.*, 264 P.3d 367, 370 (Alaska 2011) (citing *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 581 (Alaska 2007)).

[2]    *Id.* (quoting *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 711-12 (Alaska 2003)). A lease is a contract and should be interpreted according to contract principles. *Rockstad v. Global Fin. & Inv. Co.*, 41 P.3d 583, 586 (Alaska 2002) (citing 49 AM. JUR. 2d LANDLORD AND TENANT § 43 (1995)).

determines that the contract language is ambiguous as to the parties' intent.[3] "A party opposing summary judgment need not prove that it will prevail at trial, but only that there is a triable issue of fact."[4] "Any evidence sufficient to raise a genuine issue of material fact, so long as it amounts to more than a scintilla of contrary evidence, is sufficient to oppose summary judgment."[5]

Summary judgment is generally not appropriate if a contract is "reasonably subject to differing interpretations."[6] The court looks to "both the language of the lease and extrinsic evidence to determine if the wording of the lease is ambiguous."[7] If the text is clear and unambiguous, the court construes it "solely according to its written terms."[8] Notably, "[t]he mere fact that two parties disagree as to the interpretation of a contract

---

[3]     *Alaska Hous. Fin. Corp. v. Salvucci*, 950 P.2d 1116, 1119 (Alaska 1997) (citing *Keffer v. Keffer*, 852 P.2d 394, 397 (Alaska 1993); *Day v. A. & G. Constr. Co.*, 528 P.2d 440, 443 (Alaska 1974)).

[4]     *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 607 (Alaska 2011) (quoting *Indus. Commercial Elec., Inc. v. McLees*, 101 P.3d 593, 597 (Alaska 2004)).

[5]     *Id.* (quoting *Beal v. McGuire*, 216 P.3d 1154, 1161 (Alaska 2009)).

[6]     *Kincaid v. Kingham*, 559 P.2d 1044, 1047 (Alaska 1977) (quoting *Modern Constr., Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976)).

[7]     *N. Pac. Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 579 (Alaska 2005) (quoting *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1046 (Alaska 1977)).

[8]     *Rockstad*, 41 P.3d at 586 (citing *Wessells*, 562 P.2d at 1046 n.10); *see also Shaffer v. Bellows*, 260 P.3d 1064, 1070 (Alaska 2011) ("We 'look to extrinsic evidence of the parties' contractual intent only if the language of the instrument is ambiguous.' " (quoting *AAA Valley Gravel, Inc. v. Totaro*, 219 P.3d 153, 160 (Alaska 2009))).

term does not create an ambiguity."[9]  The court should find an ambiguity exists only if the disputed terms are reasonably subject to differing interpretations after viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms.[10]  If the court determines, "in light of all the circumstances, the language of the contract appears to be capable of only a single meaning, the [c]ourt need not go beyond the instrument in a search for other possible constructions which either of the parties may have placed upon their agreement."[11]

## III.  DISCUSSION

Having reviewed the contract documents, the evidence submitted in the summary judgment proceedings, and the parties' arguments, we affirm the superior court's grant of summary judgment in Huang's favor.

First, contrary to the Zhaos' arguments, there is no genuine issue of material fact regarding Mr. Zhao's signature on Amendment 2.  The amendment was prepared by the Zhaos' son and was given to Huang "on or before May 7, 2010" with what appears to be Mr. Zhao's signature already on it.  Mr. Zhao submitted an affidavit stating he was in China until May 6, 2010, but failed to deny that the signature was his.  The Zhaos fail to raise an issue of fact because one cannot be created by silence where there is a duty to speak.  We have specifically noted that use of an artifice cannot create a genuine issue of material fact, as "[s]ummary judgment procedure was intended to eliminate by

---

[9]     *Wessells*, 562 P.2d at 1046.

[10]    *N. Pac. Processors*, 113 P.3d at 579 (citing *Wessells*, 562 P.2d at 1046).

[11]    *Nat'l Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 584 (Alaska 1976).

exposure superficial issues created by innuendo instead of direct allegations."[12]

Second, taking all of the lease documents and extrinsic evidence into account, there is no reasonable interpretation other than the parties knew that Huang wanted to make the renovations generally noted in his various floor plans, knew that Huang's intended renovations might require compliance with the 2006 fire code, and intended that the Zhaos would be responsible for adding a fire suppression system in the restaurant if required by the fire department. When the fire department notified Huang that his proposed renovations would require the addition of a fire suppression system and the Zhaos refused to install such a system, Huang was entitled to a refund of his $50,000 deposit and cancellation of the lease and purchase agreements.

Third, the superior court's ruling was based on contract interpretation, and not, as the Zhaos suggest, on a mutual mistake theory. Huang correctly notes that although the superior court "mused" during oral argument that it could analyze the case under a mistake theory, that theory did not form the basis of its decision. The superior court's order did not focus on, or even consider, a mistake theory or who should bear the risk of mistake. It did not cite case law on the issue of mistake or mention "mistake" or "risk." Instead, the superior court focused on the lease language, concluding that it unambiguously placed the burden of fire code compliance on the Zhaos if required by the planned renovations.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's judgment.

---

[12]     *Alaska-Canadian Corp. v. Ancow Corp.*, 434 P.2d 534, 537-38 (Alaska 1967).