## MICHAEL TOOMEY *vs.* ERASTUS W. SANBORN.

Suffolk.    November 15, 1887. — January 7, 1888.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Negligence — Personal Injuries — Private Way — Dangerous Pitfall.*

The husband of the owner of city premises, rear communication with which was had through a dimly lighted passageway, while personally supervising repairs on the premises, caused a plank to be removed from the passageway and left a hole beneath unguarded, into which an employee of the city who was wont to use the passageway in taking offal from the premises fell, and was injured. *Held*, that the husband was liable.

TORT for personal injuries.

The third count of the declaration was as follows: " The defendant carelessly and negligently removed the planking of a certain passageway, thereby uncovering an excavation and hole beneath, and neglected to properly guard the same, and warn and notify those using said passageway of the removal of said plank, and the existence of said opening, excavation, and hole; and said passageway was thereby rendered unsafe to those using the same. The plaintiff was rightfully using said passageway, and was in the exercise of due care, and in consequence of the aforesaid condition of said passageway, and the aforesaid negligence of the defendant, he fell into said opening, excavation, and hole, and was seriously hurt."

The answer was a general denial.

Trial in the Superior Court before *Mason*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff called several witnesses, who testified, in substance, that the passageway in question was about four feet

wide, and some thirty or forty feet in length, with a plank walk or floor; that it opened out of Cambridge Street in Boston, and communicated by means of doors through its walls or sides with back entrances to houses numbered 1, 3, 5, and 7, on Hancock Street; that it was covered by building No. 1, and received light from the door opening on Cambridge Street, which was usually kept open during the day, and from a window over the door at the opposite end. The defendant, who was called by the plaintiff, testified that the door on Cambridge Street was the full width of the passageway, with the exception of the necessary casings on either side ; that the door was eight or nine feet high; that above the door was a window extending across the door, and about two feet high ; and that at the time of the accident a portion of the partition fence in the rear of No. 5 was down, and light came in through that opening.

The flooring of the passageway for some six or eight feet from the street entrance was on the street level; but from that point it was higher, there being a rise of five steps, and it was upon this raised or higher part of the passageway that the accident occurred. The entrance to No. 5 was on the left of the passageway entering from Cambridge Street, and to No. 1 on the right nearly opposite the entrance to No. 5; both opening from the higher part of the passageway. The accident occurred on Tuesday, October 20, 1885, at about half past nine in the morning.

The plaintiff put in evidence to show that there were no basement entrances to any of the above-named houses on Hancock Street, and that no other rear entrances for the removal of offal existed, save those opening on the passageway. It further appeared, that, some time prior to October 20, certain repairs were being made on house No. 5, either on the rear extension or on the shed connected with it; that the house belonged to the wife of the defendant; that the repairs were being done under the personal direction and supervision of the defendant; that the material used for making these repairs was brought in through this passageway; that, on the morning of October 20, two workmen employed by the defendant, by the direction and under the personal supervision of the defendant, removed a plank of the floor on the left-hand side of the passageway, for the purpose of seeing if there were some brick beneath

which they desired to use (the plank taken up being about six feet long, and from one and a half to two feet wide); that in order to ascertain this, a small lamp was obtained, and one of the workmen and the defendant went down into the excavation beneath the floor, which was between two and three feet deep; that, after they had examined and found no brick there, the workmen went back to their work in the yard, and the defendant took the lamp into the house, leaving no one in the passageway; and that in a " little while " — " don't know how long " — afterwards, in the language of the only witness who testified as to the time, one of the workmen heard a noise in the passageway, immediately went into it, and found that the plaintiff had fallen into the excavation. This was about half past nine in the morning, the day being bright and sunlit. The precise time between the removal of the plank and the time when the plaintiff fell into the excavation was not given, one of the plaintiff's witnesses putting it at from one half to three quarters of an hour, and two others at about twenty minutes, the defendant saying he should think it was ten or fifteen minutes.

The defendant testified that when he left the passageway the plank had been placed on its edge, resting at one end against the wall on the left, adjacent to the opening, so as to form a guard to those coming into the passageway from Cambridge Street. The two workmen did not remember where it was placed, and the plaintiff testified that no plank stood on its edge, and no plank at all was on that side of the passageway; that he saw the plank when it was put back in its place by the defendant, a short time after he was hurt, and that it was taken from the pile of lumber on the other side of the passageway. One Hardy testified that there was no plank near the hole, and no plank at all on that side of the passageway. Some of the plaintiff's witnesses testified that there was on the right side of the passageway a pile of lumber; others testified that they saw none, and did not think there was any. The defendant testified that there was no lumber in the passageway over which he had any control; that he did not think there was any lumber in the passageway; and that he was certain that there was none opposite or near the hole. It appeared by the evidence that the

space between the opening and the right-hand wall of the passageway was from two to two and a half feet.

The plaintiff testified that he was employed in the health department of the city of Boston, in the removal of offal, and acted under the direction of the superintendent of health; that on the 20th of October he was assisting the driver of the offal cart; that on the said 20th of October, and in his regular round of duty, he went to the passageway in question; that as he went up, with the purpose of entering the entrance of No. 1 to remove the offal, he fell into the opening occasioned by the removal of the plank; that he had been in the habit of going to these houses on Hancock Street to collect offal, and of using this passageway, for some thirteen years; that he usually went there on Tuesdays, Thursdays, and Saturdays of each week, generally at from 9.20 to 9.30 in the morning, but sometimes went in the afternoon; that his hours of work were from a quarter before seven in the morning until six in the afternoon; and that he went into the passageway as usual, saw the pile of lumber on the right, and as he was passing it stepped into the hole on the left, which he did not see, it was so dark. He said, " I had to keep to the left of the lumber." He was intending to enter No. 1 first; said he did not see the hole before he stepped into it, and that there was nothing there which led him to think a plank was up; that there was nobody in the passageway; that there was no light there, and nothing there except this pile of lumber; and that he was walking the same as he usually did. He said, " I walked into it just as anybody would; I thought the place was as solid as any place." He said that he had never known of any of the floor of the passageway being taken up except once, about nine years before.

The plaintiff also testified that, during the thirteen years that he had been in the habit of going to this place, he had seen other people use this passageway, — grocery-men, icemen, provision-men, milkmen, every kind that would want to go there on business.

John Hardy testified that he was the driver of the offal cart on the day in question; that the plaintiff entered the passageway to get the offal from No. 1, a little ahead of the witness; and that when he got nearly opposite No. 5 he fell into the

hole; that he had been on this route a year and a half, using this passageway; that Toomey walked into the passageway " as usual, same as he always did "; that there was no light there, and that there was no barrier or warning of any kind.

The plaintiff offered two ordinances of the city of Boston, one relating to house offal, and another relating to the superintendent of health, for the purpose of showing that the removal of house dirt, ashes, and offal is within the power and duty of the superintendent of health; and that all house offal shall be kept in easily accessible places, and taken away as often as twice each week by the men in the employ of the superintendent of health.

The defendant, having been called as a witness by the plaintiff, testified that he did not own house No. 5 on Hancock Street; that he had once owned it, but about twenty years ago conveyed it to his daughter; that some fifteen years ago his daughter conveyed it to his wife, who had owned it ever since; that in 1885, and for some years prior thereto, she rented it to a tenant, and that he, his wife, daughter, and son boarded in the house with the tenant; and that he had lived or boarded in the house continuously for some twenty years.

All the plaintiff's witnesses excepting the defendant testified that the passageway was quite dark, one testifying that it was so dark that you could not distinguish a person's features until close to him, the plaintiff testifying that it was very dark, and the defendant testifying that it was light enough to read a newspaper, as he had satisfied himself a day or two before the trial. A witness called by the defendant testified, " I think it was plenty light enough for one to see well enough."

The defendant asked the judge to instruct the jury that on the whole evidence the plaintiff was not entitled to recover under the third count. The judge declined so to instruct; the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*E. Avery*, for the defendant.

*H. E. Swasey*, for the plaintiff.

FIELD, J. The single exception argued by the defendant is to the refusal of the court to rule " that on the whole evidence the plaintiff was not entitled to recover under the third count." It appears that estate No. 5 was owned by the wife of the

defendant, but had been let to a tenant who occupied it; that the defendant and his wife boarded and lived with the tenant in the house on the estate; that the defendant was personally supervising repairs which were being made upon the house, and had directed that a plank be removed from the floor of the passageway; and that this had caused a dangerous hole to be opened in the floor, which was left unguarded and into which the plaintiff fell. There was evidence that the passageway had been constructed and was maintained for the purpose, among other things, of affording a back entrance to the house, and was, as the defendant knew, constantly used by the servants of the city of Boston for the purpose of removing the ashes and offal from the house, and that the plaintiff, as such servant, was rightfully using the passageway on the implied invitation of both the owner and occupant of the house for this purpose and was in the exercise of due care.

The case taken most favorably for the defendant is, that he caused to be opened in a private way a dangerous pitfall, into which the plaintiff, while rightfully using the way with due care, fell. The ruling was right. *Exceptions overruled.*