Rosa B. Heyser, *et al.*, v. Emma L. Crane, *et al.*

198 So. 472
Division A
Opinion Filed November 1, 1940

*E. M. Magaha, Henderson & Franklin,* and *Parker Holt,* for Appellant;

*William J. Wood,* for Appellees.

Thomas, J.—Appeal in this case is from a final decree entered by the chancellor in an interpleader suit finding that Martha E. Leak intended to give to Martha Crane Linton three United States Liberty Bonds; that she transferred them by constructive or symbolical delivery which was complete in view of the circumstances surrounding the transaction; that they were accepted by the donee; and that the gift was made in the apprehension of death.

Having declared the gift a valid one, *causa mortis,* the

chancellor ordered the executors of the estate of Martha E. Leak to place the property in the hands of the donee. This conclusion by him was based on the testimony of witnesses whom he heard and whose narrations developed the following factual situation: When the donee was a student in the high school, she went to live with the donor, her grandmother. Strong affection had existed between the two for many years, and after the donee had completed her course in high school, the donor paid the expenses of her education at the Florida State College for Women, in Tallahassee. About a year before her death, the donor advised her lawyer that she had three one thousand dollar Liberty bonds that she was keeping for the granddaughter, and on one occasion, when she was preparing for a journey, she left with her banker an envelope bearing the name of the granddaughter with instructions that it be delivered to the addressee in the event "anything happened to her." Later, she procured the envelope from him and placed it in her safe deposit box.

In the year 1930 the grandmother became seriously ill and a physician and nurse were summoned, the latter remaining in attendance upon her until she died after being sick for about seven days. Two days prior to her death, at a time when her physical condition was precarious but her mind was clear, she indicated that she wanted someone to go from her then residence in Lakeland to her bank at Fort Myers, and obtain some money. Her nurse "propped her up in bed," and placed a pillow across her lap so that she might be enabled to sign checks for the withdrawal of some of her funds. She then called her granddaughter, donee, and instructed her to fetch her pocketbook from a dresser drawer, stating "she was afraid she wasn't going to get well." From it she took the keys to her deposit box, and told the donee to go to the bank at Fort Myers, cash

the checks, and to tell the president of the bank to allow her to enter the box for the purpose of taking therefrom an envelope bearing the donee's name. She further instructed her granddaughter to rent a safe deposit box of her own and to place therein the envelope, which evidently contained the three bonds she had put in it several months before, and which was the same one, bearing the inscription: "The property of Martha Crane," discovered among the donor's papers in her box by the executors after her death. Following these instructions, the granddaughter cashed the checks, rented a depository from the bank, and delivered the grandmother's message to the president, who informed her that he could not comply with her request without a written order. Thereupon, the donee returned to her grandmother's bedside, and advised her that she had been unable to perform the entire mission because of the rule of the bank prohibiting anyone to enter the safe deposit box of another without a written order. She discovered that her grandmother had grown weaker during her absence, and when asked at the trial why she did not get the written order afterwards, replied that the failure to do so was due to the grandmother's aggravated condition. Within forty-eight hours the grandmother died.

The chancellor who heard the testimony in this case specifically decided in his decree that the intention of the donor to make a gift was established. This element is absolutely necessary to the validity of a gift, *causa mortis* (Leonard v. Campbell, 138 Fla. 405, 189 So. 839), and we think that it was well proven in this case. Not only did the donor show a particular interest in the donee for many years prior to her decease, but several months before earmarked the bonds, which subsequently became involved in the interpleader suit, as those intended for her granddaughter. It seems quite clear from the testimony that

although the donor retained the possession of them, she had indicated she intended them to become the property of the donee and, more important, but two days prior to her death sent the donee on an errand calculated to effect their transfer from the safe deposit box of the donor to that of the donee. The effort on the part of both to accomplish this exchange was frustrated solely because of a rule of the bank which, so far as the testimony reveals, neither was familiar. When the grandmother, feeling that she would not recover, handed the key to her depository to the granddaughter, and sent her to the bank to obtain bonds which she had long before labelled as the property of the granddaughter, and instructed her to rent a box and see that they were properly lodged there, a definite intent on her part to make a gift was obvious.

Passing to the next essential element mentioned by the chancellor in his decree, we reach the matter of the effectiveness of the delivery. It is contended by the appellants that no evidence supports this requisite. The chancellor determined that the delivery, which he described as constructive and symbolical, was "the best and most complete * * * that said donor could make to said donee under the circumstances surrounding the parties and the location of the property so given." With this conclusion we quite agree. The donor was bedridden and therefore unable to proceed to the bank to accomplish the transfer herself. It was only natural that she should send as her messenger the donee, who had long lived in her home and for whom she had a natural affection, even though the donee was interested in the transfer. The procedure was interrupted by a rule of the bank. By the time this information reached the donor, she had become too sick to execute the required order and before she could do so, died. The city in which the donor lived was distant many miles from the one where the bank

was located.  This Court said long ago in the opinion in Powell v. Leonard, 9 Fla. 359, that:

"What shall constitute a good delivery is a question of much greater difficulty, and is often attended with much perplexity.  Its proper solution can only be arrived at by considering, not only the locality of the property, but also its nature and kind.  As to the locality of the thing donated, it is not always practicable to make an actual tradition of the thing itself, and hence the delivery of a written conveyance, as in the case of vessels at sea, or of the keys, as in the case of goods in a warehouse, or trunk, are sometimes resorted to as a proper mode of transfer, and have ever been held to be a sufficient delivery."

We are fully conscious that such gifts are tested by strict rules and that the relaxation of them is "fraught with danger" because of the possibility of fraud (Szabo v. Speckman, 73 Fla. 374, 74 So. 411), but we feel that in the circumstances peculiar to this case, the gift which the donor intended to make falls in the category of those which may be consummated by symbolical delivery, and that in so holding, we do not relax any of these safeguards or offer an opportunity for fraud in future transactions of a similar nature.  (See Braun v. Brown, 94 P. (2d) 348, 127 A. L. R. 773 and note.)

We see no purpose in elaborating on what we have said about the intent of the donor and the nature of the delivery in reviewing the other elements mentioned in the decree, namely, defeasance, acceptance and expectation of death. As these elements are bound up with each other and with the ones we have discussed, only a general treatment of them will be attempted.  We are convinced that the donor did everything within her power while on her deathbed to effectuate an outright gift to the donee, and that at the time she anticipated death, as will appear from the remark

made by her when she sent her granddaughter forth to interview the banker. It is undisputed that she did depart this life the second day thereafter.

In their briefs appellants discussed quite briefly the two remaining elements of gifts of this kind, namely, acceptance and competency of the donor, the latter of which was not mentioned by the chancellor, and neither of which has been greatly stressed in the presentation of the case. We dismiss consideration of these factors by observing that the evidence shows without contradiction that the donee received the keys and attempted to perform the mission in all of its details, which clearly indicated acceptance on her part, and that the undisputed testimony of the nurse, who attended the donor in her last illness and who has no interest whatever in the outcome of the litigation showed the mind of the donor to have been clear when the granddaughter was sent on the mission. To quote this witness: " * * * she knew exactly what she was doing."

It is our conviction after a careful study of the entire record and the briefs that the chancellor was eminently correct in his disposition of the litigation, and his decree is, therefore—

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.