George **GILBERTSON**, Appellant,

v.

**CITY OF FAIRBANKS**, Alaska, Appellee.

No. 85.

Supreme Court of Alaska.

Jan. 22, 1962.

Charles E. Cole, Fairbanks, for appellant.

Edward A. Merdes, of McNealy, Merdes & Camarot, Fairbanks, for appellee.

Before NESBETT, C. J., and DIAMOND and AREND, JJ.

NESBETT, Chief Justice.

Appellee commenced suit in the United States District Court for the District (Territory) of Alaska in 1956 to recover from appellant the sum of $5,146.25, the balance owed for utility services furnished between September of 1950 and August of 1952. Appellant denied the furnishing of the services, their value, that demands had been made for payment and admitted that no part of the amount claimed had been paid, alleging that no part of the claimed sum was due. Appellant counterclaimed alleging that on or about July 14, 1952, appellant's property, the Pioneer Hotel, was totally destroyed by fire because of appellee's agent's negligent acts in turning off electric power to water pumps being used to fight the blaze. The counterclaims were dismissed. Appellee moved for summary judgment in April of 1959 supporting the motion with the affidavit of Lester L. Glescoe, superintendent of appellee's electric and telephone departments. On May 13, 1959 appellant took the deposition of Ross Simpson, comptroller of appellee's utility system, and on the same date appellee took appellant's deposition. Memoranda were thereafter filed by both sides. Appellee also filed a later affidavit of Glascoe and the affidavit of Ross Simpson containing a summary and supporting detail of all utility charges made by appellee and payments received from appellant between August of 1950 through October of 1952, showing that the balance owed by appellant, before interest, was the sum of $5,146.25.

The motion was taken under advisement by the court some time after June 30, 1959, but had not been decided by February 20, 1960, the date on which the Superior Courts of Alaska officially assumed their state jurisdiction. The case was therefore transferred to the Superior Court for the Fourth Judicial District and that court granted the motion for summary judgment on September 30, 1960.

At the time the motion was filed Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., was in force in Alaska. At the time the motion was decided Rule 56 of the Rules of Civil Procedure of Alaska was applicable. The rules are identical in every aspect with which we are here concerned.

Appellant contends that his pleading and deposition when considered in relation to

the original affidavit of Glascoe, raised a genuine issue as to whether appellant had paid the claim sued upon.

The original affidavit of Glascoe, dated April 21, 1959, was not designated to be included in the record. However, the allegedly "conflicting and confusing" portion appears to have been quoted by counsel for appellant on page 8 of the deposition of Ross Simpson. It states in substance that between September 26, 1950 and August of 1952 plaintiff furnished defendant steam heat, electricity, water and telephone service for the Pioneer Hotel and "that the agreed and reasonable value of the services thus rendered and utilities thus furnished was the sum of $5,146.25". This affidavit was contradicted, according to appellant, when Ross Simpson testified by deposition on May 13, 1959. At this hearing Simpson produced a statement itemized by months showing the amount charged for each separate utility service furnished, the total of each monthly billing and the date and amount of all payments made by appellant. This statement reflected the gradually increasing monthly net balance owed by reason of the fact that appellant would regularly pay all items of the billing except that for steam heat. Appellant's argument seems to be that since the *total* value of all utility services rendered over the period were shown by Simpson's testimony and exhibit to be far in excess of $5,146.25, Glascoe's affidavit of April 21, 1959 was incorrect and confusing and this, coupled with appellant's testimony on deposition, raised a genuine issue of fact.

We do not agree. Glascoe's affidavit, as appellant himself points out, was patterned after the wording of the last paragraph of the complaint. Instead of stating that the *net* balance owed by appellant for utility services furnished over the period was $5,146.25, it stated that the total value of all services rendered over the period of time involved was $5,146.25. However, if appellant had any doubt as to what he was being sued for when the complaint was filed, the picture was clarified by the testimony and exhibits produced by the deposition of Ross Simpson. Before hearing on the motion, Glascoe filed a clarifying affidavit on June 29, 1959 which stated that the sum for which no payment had been received for utility services rendered was $5,146.25. Before hearing, the affidavit of Ross Simpson was also filed, accompanied by the detailed accounting just mentioned. By the time the motion was heard all of the documentary evidence clearly reflected that the net balance claimed to be owed by appellant for all utility services furnished to him was the sum of $5,146.25.

Against the showing made by appellee, appellant relied on his own testimony on deposition and quotes the following from page 4 as having raised a genuine issue of fact as to payment:

"Q. [By counsel for appellee] And is it not true, then, assuming that the rates were valid—that is an assumption—that you do owe what the City contends you owe for steam heat?

"A. [By appellant] I am sure my bills was paid as my cancelled checks show.

"Q. For all three accounts?

"A. For all three accounts, so far as I know. I could have lost some checks in the fire."

However, this does not complete the picture that was before the trial court when it ruled. All of the checks produced by appellant representing payments made to appellee over the period of time here involved had definitely been credited to appellant's account as the exhibits reflect. The checks show regular monthly payments by appellant from September of 1950 to and including the month of July 1952, presumably the month of the fire. Five payments by check were made by appellant on September 16, 1952 and a last payment on December 2, 1952. Appellant's statement, "I am sure my bills was paid as my cancelled checks show." raised no issue. The cancelled checks plainly indicated that his utility bills were not fully paid. The

statement, "I could have lost some checks in the fire." did not raise an issue. From the cancelled checks produced for every month preceding the fire, and including the month of the fire, the fair inference was that no checks were lost. Appellant had ample time to make some positive showing in this respect. For example, he could have represented to the court that his record of checks written showed that some checks submitted in payment had not been credited, or that his record of checks written had been lost in the fire. Simpson's testimony indicated rather clearly that appellant's regular practice was to deduct the steam heat item from his monthly utility billing and pay the balance by check. This was appellant's method of registering objection to an increase in the steam rate placed in effect by appellee. In December of 1950 appellant's steam was cut off until he paid his account current as of October 1950. Appellant himself improperly interrupted Simpson's deposition to supplement the record on this point by stating: "They cut off my steam heat, so I had to pay."

Appellant was evasive in his deposition and in some instances refused to answer proper questions put to him by appellee. In this respect he was improperly encouraged by his counsel. On one occasion appellee's counsel questioned appellant as follows:

"Q. I asked you if an audit showed that the total amount of your checks received did still leave an unpaid balance, would you be willing to pay it?"

Appellant's counsel then improperly stated:

"I object on the grounds that he may want to take the position the audit is incorrect and the records not properly kept."

On another occasion the following transpired:

"Q. [By counsel for appellee] You haven't answered my question, Mr. Gilbertson. If the total amount of the checks show a descrepancy [sic] from the amount shown on the books of the System, would you recognize the debt?

Counsel for appellant, after registering an objection, improperly added:

"He may wish to obtain the advice of counsel before he agrees to a debt." Again, when essentially the same question was asked—a question which went to the very heart of the issue—where an unequivocal straightforward answer might well have raised an issue of fact, appellant's counsel interrupted and stated:

"I object to that question and advise the witness not to answer on the grounds that I do not think it is relevant here."

Appellant's extreme evasiveness and his counsel's disregard of the rules governing the taking of depositions[1] have left us with the impression that neither the appellant nor his counsel intended to cooperate in the discovery proceeding.

Aside from the fact that neither appellant nor his counsel were cooperative, it is clear to us that the trial court was correct in granting summary judgment because no genuine issue of fact remained. Appellant did not at any time make a clear unequivocal claim that his account with appellee was paid in full. His answers to questions which could have produced a clear statement of his defense were invariably, "I believe our checks showed that we paid it", "I believe the checks should be evidence enough." When asked where error had occurred, since the records of appellee showed that he had not paid the balance sued for, and his own exhibit, consisting of 41 cancelled checks, showed that he had not paid in full, he replied, "It seems there is no error."

After the showing made by appellee in this case appellant had the duty under Civil Rule 56 of clearly stating his defense of payment and of showing the court how he planned to support that defense with

---

1. Civ.R. 26 through 37, but particularly 26(b), 30(c).

facts which would be admissible in evidence at the trial.[2] This he failed to do. We remark in closing that in our opinion this appeal borders on the frivolous. The judgment is affirmed.

2. Egyes v. Magyar Nemzeti Bank et al., 165 F.2d 539 (2d Cir. 1948); Piantadosi v. Loew's Inc., 137 F.2d 534 (9th Cir. 1943); Duarte v. Bank of Hawaii, 287 F.2d 51, 53–54 (9th Cir. 1961).