**The PORT VALDEZ COMPANY, Inc.,
a Washington corporation, Appellant,**

**v.**

**CITY OF VALDEZ, Appellee.**

No. 877.

Supreme Court of Alaska.

March 1, 1968.

John McCrea, III, and Joseph Rudd, of Ely, Guess, Rudd & Havelock, Anchorage, for appellant.

Robert C. Erwin and Brian J. Brundin, of Hughes, Thorsness & Lowe, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Appellee city of Valdez instituted what was essentially an action to quiet title against appellant Port of Valdez Company.

After issue was joined, appellee's motion for summary judgment was granted by the superior court. We have determined that the superior court's assessment of the merits of the summary judgment motion was correct.

The primary basis of appellee's motion for summary judgment was an almost exclusive reliance upon the allegations of its complaint and certain exhibits which were attached thereto and made part of the complaint. No affidavits, depositions, or documents were filed by appellant in opposition to the summary judgment motion. Appellant did file two memoranda of law in opposition. The gist of these memoranda was that a genuine issue as to the material fact of the parties' intent existed. Appellant further contended that the existence of this genuine material factual issue was raised by the allegations contained in its answer to the complaint.

We consider our recent holding in Alaska-Canadian Corp. v. ANCOW Corp.[1] apposite. There, in upholding the superior court's grant of summary judgment under Civil Rule 56, we said:

> In construing this rule in Gilbertson v. City of Fairbanks this court held that where a clear showing in support of a motion for summary judgment had been made, it was incumbent that the party opposing the motion clearly state its position or defense and show the court how it planned to support its position or defense with facts which would be admissible in evidence at the trial.[2]

In the case at bar we are of the opinion that appellee's showing clearly demonstrated the absence of any genuine issue of a material fact, and that appellant's opposition thereto failed to meet the requisite standards outlined in the Alaska-Canadian Corp.[3] case.

Review of the allegations of the parties' pleadings and the showing made by appellee shows that the following facts were established: The earthquake of March 27, 1964, made the "existing townsite and location of the City of Valdez unsuitable for further development and use as the location of the city." On April 16, 1964, appellant agreed to convey to appellee certain lands in the Mineral Creek Townsite which was located near the damaged townsite. By deed dated June 17, 1964, appellant conveyed to appellee certain lands in the Mineral Creek Townsite. Contemporaneously the parties entered into and recorded an agreement pursuant to which "certain conditions" were attached to the June 17, 1964, conveyance.[4]

Subsequent to the June 17, 1964, deed and agreement, the Office of Emergency Planning and the Alaska State Housing Authority "embarked upon a comprehensive and expensive plan for the relocation of the physical facilities and the population of the City of Valdez to the new townsite." At this time it became apparent to all concerned with the relocation of the townsite that the deed and agreement of June 17, 1964, would not accomplish the proposed relocation.[5] Appellee asserts that when these inadequacies became apparent appellant "desired a reconveyance of certain properties conveyed to the City by the instrument dated June 17, 1964, and that certain adjustments of the boundaries

---

1. 434 P.2d 534, 536 (Alaska 1967) (footnote omitted).

2. Gilbertson v. City of Fairbanks, 368 P.2d 214, 216–217 (Alaska 1962). Also cited was Isler v. Jensen, 382 P.2d 901 (Alaska 1963), and 6 J. Moore, Federal Practice ¶ 56.15(3), at 2343–2347 (2d ed. 1966).

3. 434 P.2d 534, 536–537 (Alaska 1967).

4. This contemporaneous agreement was specifically mentioned in the June 17, 1964, deed.

5. It was asserted that "some of the provisions [of the agreement] * * * were inconsistent with the rules, regulations and statutes governing urban renewal programs proposed for the new townsite."

would inure to the benefit of all parties." Appellee thereafter did reconvey, by quitclaim deed to appellant, all of the lands which were originally conveyed to it by the June 17, 1964, deed. In the reconveyance quitclaim deed of August 7, 1964, it was recited in part that:

[I]t is deemed advisable to reconvey the hereinafter described land to the Port Valdez Company, Inc., to facilitate a new conveyance which will more accurately define and describe the land intended to be conveyed to the City of Valdez, Alaska. * * *

It was further established that on August 8, 1964, appellant conveyed to appellee "substantially all of the area originally included in the deed dated June 17, 1964." As to this conveyance from appellant, it was alleged by appellee that there were no conditions attached thereto.[6]

The next event of significance occurred on January 30, 1965, when the parties entered into a second agreement. The agreement stated in part that the parties desired to correct an erroneous property description contained in the August 8, 1964, deed; that appellee was in need of certain lands and easements owned by appellant; and that appellant was desirous of effecting deannexation from appellee city of specific lands it had previously conveyed to the city.[7] In paragraph 9 of the January 30, 1965, agreement, it is stated that:

This agreement is entered into in good faith by the parties to resolve all current disputes and to achieve desired ends. It is the intent of each party to be bound

hereby and "all prior agreements, events, transactions and occurrences are hereby declared to be null and void."

In our opinion this clause is crucial to the resolution of the issues raised in this appeal. Appellant, in its answer, denied appellee's allegations to the effect that the January 30, 1965, agreement superseded the original June 17, 1964, agreement. Appellant admits having duly executed the reconveyance of August 7, 1964, and the agreement of January 30, 1965. Appellant denies, however, the allegations pertaining to the parties' intentions and motivations with respect to the execution of these instruments, and consequently the legal effect thereof.

The pleadings also establish that on March 13, 1965, appellee reconveyed the property which was agreed to be reconveyed under the terms of the January 30, 1965 agreement.[8] Appellee further alleges that valuable public facilities have been installed in the new townsite area; that land acquisition procedures pertaining to the new townsite have been established; and that preference rights to various parcels within the new townsite have been awarded. Appellee's final allegation was that upon application for title insurance covering the new townsite area the title company set up as a

cloud on the title of the City of Valdez to the lands conveyed under the Deed of Correction dated March 13, 1965, the original deed and agreement, dated June 17, 1964. * * *

By way of relief, appellee requested the superior court to decree the June 17, 1964,

---

6. Appellant denied that there were no conditions pertaining to the deed of August 8, 1964. On this point appellant alleged in its answer that the June 17, 1964, contemporaneous agreement "sets forth conditions which are contained by implication" in the deed of August 8, 1964.

7. The January 30 agreement also recited that appellee was desirous of maintaining zoning and planning control over any deannexed lands and that appellant de-

sired certain lands in the new townsite be set aside as a public park.

8. Appellee additionally alleged that it fulfilled its other commitments called for by the January 30, 1965, agreement and in particular that it
secured the passage of Chapter 48, Session Laws of 1965 by the Alaska Legislature deannexing from the City the land of the defendant sought by the defendant to be deannexed.

deed nullified by the reconveyance quitclaim deed of August 8, 1964, and further to decree the June 17, 1964, agreement to be without legal force and effect by virtue of the August 7, 1964, reconveyance and the August 8, 1964, unrestricted conveyance by appellant to appellee. Appellee further asked the superior court to decree that the June 17, 1964, deed and agreement, together with the August 7 and 8, 1964, deeds were superseded by the January 30, 1965, agreement and the March 13, 1965, corrected deed executed pursuant thereto. Also as part of the relief sought, it was requested that "the cloud cast on said title by the deed and agreement dated June 17, 1964 be declared removed and to be without legal force or effect." After memoranda were filed and oral argument held, the superior court entered findings of fact, conclusions of law, and a judgment which granted appellee the full relief it had requested.[9]

As previously indicated, we hold that the trial court correctly held that appellee had met its burden as movant in showing the absence of any genuine issue as to a material fact.[10] As was previously mentioned, the crux of appellant's position is that there was a material factual issue as to the

parties' intentions in regard to the execution of the two agreements and various deeds. Our study of this appeal leads us to the conclusion that there is no ambiguity in paragraph 9 of the January 30, 1965, agreement. Since there is no ambiguity, the trial court properly held that the January 30, 1965, agreement superseded and nullified all prior agreements between the parties.

▮▮▮▮ In reaching this conclusion, we believe the rule which we adopted in Pepsi Cola Bottling Co. v. New Hampshire Ins. Co.[11] is pertinent. In that case we stated in part:

> We are in agreement with those authorities which hold that where the terms of a policy of insurance are clear and unambiguous, the intent of the parties must be ascertained from the instrument itself, and that where there is uncertainty or ambiguity, intent may be ascertained from the language and conduct of the parties, the objects sought to be accomplished and the surrounding circumstances at the time the contract was negotiated.[12]

In its conclusion of law the superior court found the January 30, 1965, agree-

---

9. In Palzer v. Serv-U-Meat Co., 419 P.2d 201, 205 (Alaska 1966) (footnote omitted), we said:

> Decisions which have construed the federal counterparts of our Civ.R. 52 and Civ.R. 56 hold that no findings of fact are necessary in ruling on motions for summary judgment. We conclude that in disposing of motions for summary judgment under our rules of civil procedure no findings of fact are required of the trial court. And we specifically hold that in granting summary judgment it is unnecessary for the trial court to make findings in regard to the lack of any genuine issues of material fact to be litigated.
>
> We do not consider it error for a trial court to make findings of fact and conclusions of law in ruling upon summary judgment motions. In certain cases, such as the case at bar, findings and conclusions of the trial court can be of valuable assistance in our review of the matter.

10. See Wilson v. Pollet, 416 P.2d 381, 383–384 (Alaska 1966); Ransom v. Haner, 362 P.2d 282, 289 (Alaska 1961), as to the burden upon a movant for summary judgment.

   Since matters outside the scope of the pleadings were considered, the trial judge correctly considered the motion as one for summary judgment rather than for judgment on the pleadings. Shannon v. City of Anchorage, 429 P.2d 17, 20 (Alaska 1967) (concurring opinion).

11. 407 P.2d 1009, 1013 (Alaska 1965) (footnote omitted).

12. See the following pre-statehood authorities which dealt with parole evidence questions: Grigsby v. Dickinson, 7 Alaska 457 (1926); Alaska Treadwell Gold Mining Co. v. Alaska Gastineau Mining Co., 214 F. 718 (9th Cir. 1914), cert. denied, 238 U.S. 614, 35 S.Ct. 283, 59 L.Ed. 1490, modified, 221 F. 1019 (1915); Noyes v. Marlott, 156 F. 753 (9th Cir. 1907).

ment to be "clear and unambiguous." Additionally, the trial court specifically stated in its conclusions of law that the January 30, 1965, agreement,

> makes no reference to the agreement of June 17, 1964, which earlier agreement contained many terms that had been accomplished before the later reconveyance and many terms which were questionable at best and of doubtful legality as against the city. * * * The parties dealt at arms length in their preparation of the January agreement. Each had the advice of counsel. If [appellant] had intended otherwise than that "all prior agreements, events, transactions and occurrences" were null and void, it could have easily inserted language to accomplish that purpose. [Appellants] should not now be heard to say the January 30, 1965, agreement and subsequent conveyance of March 13, 1965, were subject to some undisclosed restrictions.[13]

■ Absent any element of ambiguity in paragraph 9 of the January 30, 1965, agreement, the prerequisite for admissibility of parole evidence is lacking.[14] In short, we hold that the trial court's conclusions of law drawn from appellee's showing were correct.

The summary judgment entered below is affirmed.

13. The trial court also concluded that:
[Appellant's] August 8, 1964 conveyance to [appellee] was for consideration furnished by a third party, Alaska State Housing Authority. It contained no restrictions and no reference to the agreement of June 17, 1964. Therefore the agreement of June 17, 1964, was not revived by implication by the August 8, 1964 conveyance.

14. 3 S. Williston, The Law of Contracts §§ 632–33, 636, and 638 (rev. ed. 1936); Restatement of Contracts §§ 229–231, and 237 (1932); Schauerman v. Haag, 68 Wash.2d 868, 416 P.2d 88, 91 (1966); Imbach v. Schultz, 58 Cal.2d 858, 377 P. 2d 272, 274 (1962); Morlee Sales Corp. v. Manufacturers Trust Co., 9 N.Y.2d 16, 210 N.Y.S.2d 516, 519, 172 N.E.2d 280,

282 (1961); Wikstrom v. Davis, 211 Or. 254, 315 P.2d 597, 604 (1957).

In Weiner v. Wilshire Oil Co., 192 Kan. 490, 389 P.2d 803, 808 (1964), the court said:

> It is a judicial function to *interpret* a written contract which is free from ambiguity and does not require oral testimony to determine its meaning. Ambiguity in a written instrument does not appear until the application of pertinent rules of *interpretation* to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.

See also Conrad Milwaukee Corp. v. Wasilewski, 30 Wis.2d 481, 141 N.W.2d 240, 244 (1966).