**Betty R. McKEAN, Appellant,**

**v.**

**Russell HAMMOND and Helen M. Hammond, Appellees.**

**No. 926.**

Supreme Court of Alaska.

Oct. 7, 1968.

---

Joseph L. Young, Atkinson, Wade, Conway & Young, Anchorage, for appellant.

John K. Brubaker, Delaney, Wiles, Moore & Hayes, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND, and RABINOWITZ, JJ.

RABINOWITZ, Justice.

In her complaint in superior court, appellant alleged she fell and broke her left knee and left leg bone while walking on a ramp which connected the front porch of appellees' home to the surface of the ground. After issue had been joined and some discovery undertaken, appellees moved for and were granted summary judgment dismissing appellant's personal injury action.

The factual circumstances of the case are somewhat unusual. From the record it appears that appellees owned a house which was located at 1305 West 26th Avenue in Anchorage, Alaska. Sometime prior to the accident in question appellees had commenced work on their porch and in order to furnish access to this area, appellees set in place two 12 to 14-foot planks which extended from the porch to the ground in front.

Appellees left Anchorage for a weekend vacation at their cabin at Big Lake the day before the accident occurred. Prior to their departure appellees' son called from Fairbanks to inform them that Gloria Wilson, thier son's emancipated, adopted, married daughter, intended to visit Anchorage that weekend. Appellees were also told that their granddaughter was aware of the hiding place of the key to appellees' home and that they should remove the key prior to their departure for Big Lake. Appellees acquiesced in their son's suggestion and removed the key before leaving for Big Lake.

Subsequently, appellees learned that while they were at Big Lake their granddaughter gained access to their home through a window which they had inadvertently failed to lock. On September 12, 1965, while the appellees were still away at Big Lake, appellant, the owner and operator of a taxicab, received a call at approximately 8:25 a. m. to pick up a passenger at appellees' residence "to go to the railroad station." Upon arrival at appellees' home,

appellant got out of her vehicle "to let the people know I was there and I was going to help them out with the luggage, if they had any." According to appellant, the following then transpired:

> I went up the planks to the front door. They had a part glassed front door, and I looked in and saw a young lady and a young man, possibly three. I said, 'Your cab is here,' or I said something to that effect. They did not need any help and said they would be out, so I turned around to go back to my cab. I took one step off the porch and onto the plank and ended up on the ground.

In their answers to interrogatories, affidavits, and depositions, appellees asserted they were unaware of the fact that their granddaughter was on the premises in question during the time they were vacationing at Big Lake. Appellees further stated that at no time prior to the weekend of the accident did they ever give their granddaughter express or implied permission to use their home while they were away.

On the basis of essentially the foregoing, the superior court granted appellees' motion for summary judgment.[1] In his conclusions of law, the trial judge held that Gloria Wilson was a trespasser and that appellant had entered the premises at the request of Gloria Wilson without the knowledge or consent of appellees. The trial judge also determined that appellant.

> was not an invitee of the [appellees] * * * when she entered their premises. When she entered the premises [appellant] * * * was either a trespasser, or at best, a bare licensee.

In his conclusions of law, the trial judge characterized the "sole duty of care" owed by appellees to appellant under the circumstances as one requiring appellees to

> use reasonable care to warn her of any concealed dangerous conditions or activities known to the possessor or any change in the conditions of the premises which may be dangerous to her, and which she may reasonably be expected not to discover.

Taking the foregoing as the governing standard of care, the trial court's ultimate holding was that appellees had not breached any duty of care owed by them to appellant.

Our study had led us to the conclusion that the superior court erred in granting summary judgment in appellees' favor. Assuming the correctness of the trial court's determination that appellant possessed the status of a licensee at the time she fell, we are of the opinion there remained for resolution by the trier of fact the material issue of whether appellees breached any duty of care owed to appellant.

■ The common law has defined the term "licensee" as one who is privileged to enter upon the land by virtue of the possessor's consent.[2] Concerning the duty of care owed by possessors of land towards licensees, the Restatement (Second) of Torts states that a possessor of land[3]

> is subject to liability for physical harm caused to licensees by a condition of the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the

---

1. In granting summary judgment, the trial court entered findings of fact and conclusions of law. As to the propriety of findings of fact and conclusions of law in summary judgment proceedings, see Port Valdez Co. v. City of Valdez, 437 P.2d 768, 771 n. 9 (Alaska 1968).

2. W. Prosser, The Law of Torts § 60, at 385 (3d ed. 1964). Restatement (Sec-

ond) of Torts § 380 (1965), defines licensee as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent."

3. "Possessor of land" is defined in the Restatement (Second) of Torts § 328E (a) (1965), as a "person who is in occupation of the land with intent to control it * * *."

licensee of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.[4]

◼ The superior court concluded that although appellees owed a duty to warn appellant of any known concealed dangerous condition, it nevertheless granted summary judgment in appellees' favor. In so doing, the court must have necessarily found that there was no genuine issue as to whether any characteristic of the planks which led to appellees' porch constituted a known concealed dangerous condition.[5] Further, the court had to rule that on the record before it no inferences favorable to appellant on the issue of a concealed danger could be drawn.[6] The correctness of the lower court's ruling turns on the questions of whether any aspect of the planks constituted a concealed, hidden, or dangerous condition and whether appellant knew or should have known of such condition.

◼ The uncontroverted testimony in the record discloses that appellant clearly observed two planks, which she assumed to be safe and secure to walk on, leading from the ground to appellees' porch. In descending, although she was certain her foot did not slip, appellant somehow landed injured and unconscious at the bottom of a depression on the ground, entangled in one of the two planks which had fallen into the same depression. Based on the record which was presented to the superior court in conjunction with the summary judgment motion, it is apparent that appellant had, prior to her fall, perceived certain characteristics of the planks, such as their number, width, thickness, length, surface condition, stability while ascending, and their condition of being unnailed to the porch against which they rested. What remained unclear from the evidence furnished the trial court was the precise cause of the accident in question. Viewing the evidence in the light most favorable to appellant, we cannot conclude with any certainty that the fall which resulted in her injuries was not occasioned by some dangerous condition inherent in the planks, or their arrangement which was not ascertainable by one in the position of appellant. In such circumstances, we believe that the issue of appellees' breach of duty should have been submitted to the triers of fact for resolution and was not susceptible to disposition by summary judgment. Similarly, we are of the opinion that the question of whether appellant knew or should have known of any such dangerous condition was for the triers of fact to resolve.

◼ In addition to our foregoing holding, we believe that the trial court erred in holding in part that appellees' granddaughter was a trespasser at the time in question.[7] Appellee, Russell Hammond, ad-

4. Restatement (Second) of Torts § 342 (1965). See also James, Tort Liability of Occupiers of Land: Duties Owed to Trespassers, 63 Yale L.J. 144, 145 (1953).

5. In Wilson v. Pollet, 416 P.2d 381, 384 (Alaska 1966) (footnote omitted), we said in part:
   The court's function when ruling on a motion for summary judgment is to decide whether or not a genuine issue as to any material fact exists. The court is not to resolve any existing genuine issues as to material facts in determining a summary judgment motion.

6. In Wilson v. Pollet, 416 P.2d 381, 383–384 (Alaska 1966) (footnote omitted), we stated that:
   In ruling on a motion for summary judgment all reasonable inferences from the proofs offered are drawn against movant and viewed in the light most favorable to the party opposing the motion.
   In support of this portion of our opinion, we cited United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed. 2d 176, 177 (1962).

7. Restatement (Second) of Torts § 329 (1965) defines a trespasser as
   a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.
   Concerning the duty owed by a possessor of land to a trespasser, the Restate-

mitted that prior to marriage his granddaughter had stayed overnight at appellees' house in Anchorage once or twice a year on occasions when she traveled from Fairbanks with her parents. Appellee further admitted that three to four months prior to appellant's fall his granddaughter and her husband, prior to their honeymoon, had stayed overnight at appellees' Anchorage home. It was also admitted that appellees had not in any way informed their granddaughter, prior to her arrival on the weekend in question, that she was not welcome to use or stay in their house.[8] On this state of facts we cannot agree with the trial court's determination that appellees' granddaughter was a trespasser. After viewing the foregoing in the light most favorable to appellant, the reasonable inferences which can be drawn from such evidence point to the conclusion that appellees by their antecedent conduct had impliedly, if not expressly, authorized their granddaughter to use the Anchorage home even during their absence. We, therefore, hold it was error for the trial court to determine as a matter of law that appellees' granddaughter was a trespasser on the

weekend in question. This latter holding re-enforces our conclusion that even under traditional classification appellant's status at the time of her fall was at least that of a licensee. In the case at bar, appellant's classification as a trespasser played a crucial role in the legal arguments which appellees advanced. Appellees consistently argued that since appellant was the invitee of Gloria Wilson, a trespasser, "her legal relationship to the [appellee] could not be any greater than that of the person inviting her on to the premises, and therefore she was a trespasser to whom the only duty of care owed was to refrain from wilfully and wantonly injurying her."

Our disposition of these questions makes it unnecessary to answer appellant's common carrier-invitee contentions.[9]

▪ We disagree with our dissenting colleague's statement that a new rule has been promulgated. In Port Valdez Co. v. City of Valdez [10] we upheld the trial court's grant of summary judgment on the basis of our decision in Alaska-Canadian Corp. v. Ancow Corp.[11] where we said:

> In construing this rule in Gilbertson v. City of Fairbanks, (368 P.2d 214

ment (Second) of Torts § 333 (1965) states:
> A possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care
> (a) to put the land in a condition reasonably safe for their reception, or
> (b) to carry on his activities so as not to endanger them.

8. Appellee Russell Hammond also had asserted that both he and his wife had opposed the granddaughter's marriage, and that as a result their relations with their granddaughter were strained. Mr. Hammond further admitted that he had not communicated this information to his granddaughter before the weekend in question.

9. Appellant argues that since she owned and operated a taxi cab at the time of the accident she was carrying out her legal duties as a common carrier "to receive and transport all persons who offer themselves as passengers at the proper time and place." In support of this contention, appellant also cites Code of Ordi-

nances, City of Anchorage, Alaska, § 22–20 under which taxi cab operators are forbidden to "refuse or neglect to convey any orderly person or persons upon request * * *." From this basis appellant further argues that when she responded to the call she entered appellees' premises "in the service of the public interest and she should be entitled to the same protection afforded other persons who enter in the performance of duties imposed by law." Here appellant points to judicial-precedent holding that meter readers, garbage collectors, building inspectors, and meat inspectors are invitees although they do not fit into the commonly accepted definition of invitee." Appellant cites as precedent Swift & Co. v. Schuster, 192 F.2d 615 (10th Cir. 1951); Fred Howland, Inc. v. Morris, 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013 (1940); Sheffield Co. v. Phillips, 69 Ga.App. 41, 24 S.E.2d 834 (1943); Toomey v. Sanborn, 146 Mass. 28, 14 N.E. 921 (1888).

10. 437 P.2d 768, 769 (Alaska 1968).

11. 434 P.2d 534, 536 (Alaska 1967).

(Alaska 1962)) this court held that where a clear showing in support of a motion for summary judgment had been made, it was incumbent that the party opposing the motion clearly state its position or defense and show the court how it planned to support its position or defense with facts which would be admissible in evidence at the trial.[12]

In the case at bar we are of the opinion that appellees' showing failed to demonstrate the absence of any genuine issue of a material fact as whether appellees had breached the duty of care owed to appellant. No new burden has been established by the majority decision.

*Civil Rule 56(c) provides in part that:*

The adverse party not later than two days prior to the hearing may serve opposing affidavits, a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and any other memorandum in opposition to the motion.[13]

■ Although perhaps not artfully drafted, appellant did file a statement of genuine issues, as well as memorandum in opposition to appellees' motion for summary judgment. This statement of genuine issues reads in part:

Were plaintiff's injuries a proximate result of defendants breach of a duty owed plaintiff, and if so, what damages did plaintiff sustain?

Study of the record clarifies any ambiguity in the phraseology of this statement of genuine issues for in appellant's memorandum in opposition to the summary judgment motion it was stated in part that:

It is further submitted that whether the placing of unnailed planks as a ramp to a front porch is a breach of a duty owed by possessors to invitees, licensees or trespassers is also a question for the jury.

From the foregoing it is apparent that appellant's statement of genuine issues was intended to apply to the material factual issue of whether or not appellees breached any duty owed to appellant.[14]

The summary judgment entered below is set aside and reversed and the case remanded to the superior court for further proceedings.

NESBETT, Chief Justice (dissenting).

I dissent.

The question raised by appellees' motion for summary judgment was whether there existed any issue of material fact. Appellant's duty under Civil Rule 56 was to advise the court in a statement of genuine issues, specifically what issues of material fact existed for determination. Appellant failed to do this. The statement which was filed by appellant in opposition to the motion for summary judgment listed as genuine issues of material fact the following:

(1) What duty of care was owed to appellant, and

(2) Were appellant's injuries the approximate result of a breach of duty caused by appellees.

---

12. Gilbertson v. City of Fairbanks, 368 P.2d 214, 216–217 (Alaska 1962). Also cited in the *Alaska-Canadian Corp.* decision was Isler v. Jensen, 382 P.2d 901 (Alaska 1963), and 6 J. Moore, Federal Practice ¶ 56.13(3), at 2343–47 (3d ed. 1966).

13. See Form No. 108 of our Forms of Rules of Civil Procedure for an illustra-

tion of an appropriate statement of genuine issues under Civ.R. 56(c).

14. Compare Lillegraven v. Tengs, 375 P.2d 139, 142 (Alaska 1962) (footnote omitted), where this court said in part: "Issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner."

Neither is an issue of fact. Furthermore, a careful examination of the record reveals that there was no material fact at issue. The granting of summary judgment was therefore appropriate.

Appellant alleged in her complaint that the ramp from which she fell collapsed or slipped because it was negligently constructed or maintained. In her deposition appellant testified that she ascended the ramp without incident. When she commenced to descend she testified that she stepped on the left plank with her left foot and "woke up down here," indicating the ground. She said nothing detracted her attention and when asked if she knew what happened replied, "No, sir." After noticing the absence of any evidence as to the cause of the accident, the majority opinion states:

> Viewing the evidence in the light most favorable to appellant, we cannot conclude with any certainty that the fall which resulted in her injuries was not occasioned by some dangerous condition inherent in the planks, or their arrangement which was not ascertainable by one in the position of appellant.

What the majority opinion does not say, and what it should say in the interest of clarity is that a new rule has been promulgated. It is no longer required that the plaintiff alleging negligence support the allegation with a statement of genuine issue of material fact when called upon to do so by a motion for summary judgment. What the defendant-movant must now do in support of his motion for summary judgment is to make it appear to the court with some certainty that there *could not possibly have been any negligence.* The burden which until today rested upon the plaintiff alleging negligence has been transferred to the defendant.

I would affirm the grant of summary judgment by the trial court.