Dorothy E. WEBB, Appellant,

v.

CITY AND BOROUGH OF SITKA, Appellee.

No. 2888.

Supreme Court of Alaska.

March 21, 1977.

---

William H. Babcock, Sitka, for appellant.

Jan Van Dort, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices, and DIMOND, Justice Pro Tem.

DIMOND, Justice Pro Tem.

Dorothy Webb suffered a broken hip when she stubbed her toe in a crack in a Sitka sidewalk and fell to the concrete surface.[1] She brought this action for damages against the City & Borough of Sitka (hereafter called the City) on the theory that the City had negligently failed to remedy a dangerous condition of the sidewalk. The superior court granted the City's motion for summary judgment, holding that there was no liability on the part of the City. Mrs. Webb has appealed.

The court, in its memorandum decision, and the parties in their briefs, refer to the status of Mrs. Webb as a licensee or invitee as bearing on the degree of care to be exercised by the City and its resulting liability or non-liability for Mrs. Webb's injury. This is understandable because in some of our past decisions we have followed the views expressed in the Restatement of Torts, which are reflective of the common law.[2] In some of those cases we have followed the Restatement of Torts in determining the various degrees of care which an occupier, possessor or owner of land must exercise toward a person coming on the land, and we have looked to whether he is a trespasser, licensee or invitee.[3]

Upon re-examining the basis for those decisions, we have reached the conclusion that the subtleties and refinements of the rigid common law classifications of trespassers, licensees and invitees adds confusion to the law and is no longer desirable in modern times. This conclusion was reached by the Supreme Court of the United States approximately 18 years ago, when it was held that the law of admiralty would not recognize the same distinctions between an

---

1. In the area where Mrs. Webb fell, there were two large cracks about four feet apart, each running the full width of the sidewalk. The cracks were each three to four inches wide at their maximum width and one to one and one-half inches deep. The edge of the sidewalk on one side of at least one of the cracks was about one inch above the edge on the other side of the crack.

2. *Sloan v. Atlantic Richfield Co.*, 552 P.2d 157, 160 (Alaska 1976).

3. *Kremer v. Carr's Food Center, Inc.*, 462 P.2d 747 (Alaska 1969); *Chugach Elec. Assn. v. Lewis*, 453 P.2d 345, 348–49 (Alaska 1969); *McKean v. Hammond*, 445 P.2d 679 (Alaska 1968); *Correa v. Stephens*, 429 P.2d 254, 258 (Alaska 1967).

invitee and licensee as does the common law. The court stated:

The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances." [footnotes omitted][4]

In more recent years, there has been a significant modern trend to abolish the classical distinctions between trespasser, licensee and invitee as the controlling factor in determining the scope and extent of the duty of care owed by landowners[5] to persons entering upon the land.[6] As Chief Judge Bazelon of the District of Columbia Court of Appeals has stated, at the vanguard of this movement have been the Supreme Courts of California, Hawaii and Colorado, which have decisively rejected the differences between the common law categories.[7] Other courts have followed this trend in more recent times.[8]

■ We have decided to join the jurisdictions which have rejected the difference between the common law categories and no longer will predicate liability of a landowner upon the status of the person entering upon the land. We apply instead ordinary principles of negligence to govern the conduct of a landowner. The rule that we adopt is this: A landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk.[9] We adopt this rule in recognition of the fact that

The common law is not a rigid and arbitrary code, crystallized and immutable. Rather it is flexible and adapts itself to changing conditions. After all, the common law "is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals with respect to private disputes." What may be considered a just disposition of a dis-

**4.** *Kermarec v. Transatlantique,* 358 U.S. 625, 630–31, 79 S.Ct. 406, 410, 3 L.Ed.2d 550, 554–55 (1959).

**5.** We use the term "landowner" as encompassing also occupiers and possessors of land. *See* Chief Judge Bazelon's opinion in *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S.App.D.C. 86, 469 F.2d 97, 99, n. 5 (1972).

**6.** Annot., 32 A.L.R.3d 508, 520–21 (1970).

**7.** *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S. App.D.C. 86, 469 F.2d 97, 100, n. 11 (1972). *See Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); *Pickard v. City and County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971).

**8.** *Smith v. Arbaugh's Restaurant, Inc., supra* n. 11. *See* 32 A.L.R.3d 508, 520–21 (1970) 2nd October 1976 Supplement. *Supples v. Canadian Nat'l. R.R. Co.,* 53 A.D.2d 1017, 386 N.Y. S.2d 489, 490 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975).

**9.** This is the rule or test announced by the Court of Appeals for the Dist. of Columbia in *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S. App.D.C. 86, 469 F.2d 97, 100 (1972).

In essence we have followed this rule, without extensive discussion, in holding that the State of Alaska has a duty to exercise reasonable care to maintain state highways in a reasonably safe condition. *State v. Abbott,* 498 P.2d 712, 725 (Alaska 1972).

pute at one stage of history may not be the same at another stage, considering changing social, economic and other conditions of society. [footnote omitted][10]

The reasons given by the courts for abolition of the trespasser-licensee-invitee distinctions are persuasive. In the words of Chief Judge Bazelon, for example:

It is the genius of the common law that it recognizes changes in our social, economic, and moral life. Legal classifications such as trespasser and licensee are judicial creations which should be cast aside when they are no longer useful as controlling tools for the jury. The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences, and circumstances. In our opinion, the time has come to put an end to our total reliance on these common law labels and to allow the finder of fact to focus on whether the landowner has exercised "reasonable care under all the circumstances." That standard contains the flexibility necessary to allow the jury to take account of the infinite variety of fact situations which affect the foreseeability of presence and injury, and the balance of values which determines the allocation of the costs and risks of human injury. [footnotes omitted][11]

◼ In applying to this case the rule we adopt, we are not holding that the City, as landowner, is now an insurer of its property or that it must endure unreasonable burdens to maintain its property. What we do hold is that the status of Mrs. Webb, while using the City's sidewalks, is not solely determinative of the City's duty of care owed to her. We recognize, of course, that the circumstances of Mrs. Webb's presence on the City's property have some relation to the question of the City's liability. This is so because the foreseeability of her presence determines in part (a) the likelihood of injury to her, and (b) the extent to which the City must take action or the interest it must sacrifice to avoid the risk of injury to one such as Mrs. Webb.[12]

Although the trial court in this case referred to Mrs. Webb as a "licensee", it did adopt in essence the rule we state in this case by holding that the City's duty was to exercise reasonable care to maintain its sidewalks in a reasonably safe condition for travel. It also held that "there is no affirmative duty to repair [all][13] cracks or other conditions in municipal sidewalks, and that there was no evidence that the condition of the sidewalk where Mrs. Webb fell and was injured made it unreasonably safe [sic] for travel." On this basis, the superior court granted the City's motion for summary judgment.

◼ From considering Mrs. Webb's answers to the City's interrogatories, and from her deposition, it appears that the salient facts as to the condition of the sidewalk and Mrs. Webb's injury are largely undisputed. But there is still left the primary issue of whether the City had maintained the sidewalk in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk. In determining that issue, the general rule is that on a motion for summary judgment all inferences from the underlying facts must be viewed in the light most favorable to the party opposing the motion—in this case, Mrs. Webb.[14]

---

10. *State v. Morris*, 555 P.2d 1216, 1223 (Alaska 1976) (dissenting opinion of Chief Justice Boochever, quoting from *Howarth v. Pfeifer*, 443 P.2d 39, 44 (Alaska 1968).

11. *Smith v. Arbaugh's Restaurant, Inc., supra* n. 8 at 105.

12. *Id.*, at 105–06.

13. In its brief on appeal the City suggests that "it is reasonable to conclude that the word 'all'

was accidentally omitted when the memorandum of decision was typed."

14. *McKean v. Hammond*, 445 P.2d 679, 682 (Alaska 1968); *Gross v. Southern Ry. Co.*, 414 F.2d 292, 297 (5th Cir. 1969); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176, 177 (1962).

In addition to the issue of the City's negligence under the rule adopted here, it is conceivable that if negligence is found on the part of the City, there would remain the issue of whether Mrs. Webb herself was negligent, and if so, to what degree her lack of care contributed to her injuries under the doctrine of comparative negligence, which we recently adopted in Alaska.[15]

■ As a general rule, issues of negligence are generally not susceptible to summary determination, but should be resolved by trial in the ordinary manner.[16] The reason for this rule is:

> [B]ecause of the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. If reasonable minds could draw different inferences and reach different conclusions from the facts the issue must

be reserved for trial. (citations omitted)[17]

■ We believe that reasonable minds could differ on the question of whether there was negligence in this case, either on the part of the City or on the part of Mrs. Webb, or both.[18] Therefore, these issues should be presented to a jury for determination, rather than being disposed of on a motion for summary judgment.[19]

The judgment is reversed and the case is remanded for further proceedings not inconsistent with the views expressed in this opinion.

REVERSED and REMANDED.

ERWIN, J., not participating.

The City argues that it is entitled to summary judgment because Mrs. Webb did not produce any admissible evidence which controverted the evidence relied upon by the City in support of its motion for summary judgment. Our response to this is, as we have stated, that based on Mrs. Webb's answers to the City's interrogatories and upon her deposition which was taken by the City, issues of fact are raised which should be tried and not disposed of by summary judgment. It makes no difference whether such issues of fact appear from material presented by the City or by Mrs. Webb.

15. *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975). *See also Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1976).

16. *McKean v. Hammond*, 445 P.2d 679, 682 (Alaska 1968); *Lillegraven v. Tengs*, 375 P.2d 139, 142 (Alaska 1962); 6 Pt. 2 Moore's Federal Practice § 56.17 at 56–946 (1976). There are a growing number of exceptions to this general rule, 6 Pt. 2 Moore's Federal Practice, *id.*, at 56–948–51, but we do not believe this case presents such an exception.

17. *Gross v. Southern Ry. Co.*, 414 F.2d 292, 297 (5th Cir. 1969), quoting from *Harvey v. Great Atlantic & Pacific Tea Co.*, 388 F.2d 123, 125 (5th Cir. 1968).

18. The "reasonable minds could differ" test is that which we apply under Civil Rule 50 on motions for a directed verdict or for judgment not withstanding the verdict. *National Bank of Alaska v. McHugh*, 416 P.2d 239, 242 (Alaska 1966); *Poulin v. Zartman*, 542 P.2d 251, 273 (Alaska 1975). *See also* 10 Wright and Miller, Federal Practice and Procedure § 2713 (1973).

19. Mrs. Webb did not demand a trial by jury as she might have done under Civil Rule 38(b). But the City did demand "a jury trial of all issues which may be tried by a jury in this action". This demand may be relied upon by Mrs. Webb, since Civil Rule 38(d) provides in part that "A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties". *See* 5 Moore's Federal Practice § 38.45 at 344.1–3 (1976).